IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    5:25-CR-492 (AJB) |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MARVIN WOTSBELI** | ) | |
| **AGUILAR-GARCIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S
### MOTION TO COMPEL DISCOVERY

The United States of America hereby responds to the Defendant's motion to compel disclosure of Border Patrol Agent ("BPA") witnesses' personnel files.  The Defendant asserts that the disclosure is necessary because they "may" contain exculpatory or impeachment evidence, and because the BPA witnesses' credibility is at issue.  Dkt. 21, at 9-10.  The Court should deny the Defendant's motion because the Defendant's assertion about exculpatory or impeachment evidence is entirely speculative and because the Defendant's proffered facts do not implicate credibility to the degree necessary to justify either *in camera* review or disclosure of law enforcement personnel files.  The Court should also deny the Defendant's motion because the government has complied and will continue to comply with its disclosure obligations, notwithstanding defense arguments to the contrary. *See* Dkt. 21 at 10-12.

A.    **Relevant Factual Summary**

In December 2025, United States Border Patrol ("USBP") Agents, in conjunction with the Lewis County Sheriff's Department ("LCSO") and the Lewis County Probation Department ("LCPD"), organized an operation to locate and apprehend the Defendant in Castorland, New York.  The Defendant had illegally entered the United States in 2012.  Immigration removal

proceedings had been initiated against him by the U.S. Department of Homeland Security ("DHS"), and an Immigration Judge had ordered him released from custody on bond in 2018. The Defendant was ordered removed from the U.S. on June 1, 2022, but as of December 2025, the order was not executable due to a pending appeal before the Board of Immigration Appeals ("BIA"). Prior to the operation, Border Patrol Agents ("BPAs") had conducted a review of the Defendant's immigration release status and determined that the Defendant should be arrested. *See* 8 U.S.C. § 1226(a), (b).

Law enforcement officials conducted the operation to arrest the Defendant on December 15, 2025. LCPD had arranged for the Defendant to come to its office for a probation-related meeting. While the Defendant was en route to the meeting, LCSO conducted a traffic stop of a white Audi in which the Defendant was a front-seat passenger. During the traffic stop, BPA Trevor Baize approached the white Audi on the passenger side. The Defendant quickly exited the Audi and BPA Baize felt something strike his face near his left eye. The Defendant ran into the woods and was ultimately apprehended by BPAs.

The object that the Defendant threw at BPA Baize was not retrieved by law enforcement. After the Defendant fled from the vehicle, LCPD Director Matt Morrow saw an object lying in the snow near the white Audi's rear passenger side consistent with both the Audi's owner's manual and the object that struck BPA Baize. However, when BPAs returned to the scene after the Audi's departure, no object consistent with what Director Morrow saw was found in the snow. After being told by Director Morrow about the object he saw, BPAs initially believed the owner's manual had been collected by law enforcement. Ultimately, law enforcement determined the manual had not been collected and established it was in the possession of the Audi's owner after the incident's conclusion.

**B.      Disclosure of the Personnel Files is Not Warranted**

The Defendant demands the government produce the personnel files of all U.S. Border Patrol witnesses.  Dkt. 21, at 13.  The Defendant claims that the files "*may* contain impeachment information" and "*may* also contain *Brady* material" relevant to his defense.  *Id*. at 9 (emphasis added).  In support of his demand, the Defendant claims that law enforcement witnesses' credibility is at issue because (1) BPAs should have known about the Defendant's pending BIA appeal; and (2) trial will involve testimony from multiple witnesses describing their personal recollections of events, and their testimony will not always align.  The Defendant's belief that the personnel files "may" contain impeachment or *Brady* material is entirely speculative, and the facts he asserts in support of his demand either do not affect the BPAs' credibility or are factors present at any trial and therefore do not justify disclosure.  This Court should deny the motion.

**1.      Legal Standards**

The Defendant asserts that disclosure of the personnel files is required under Federal Rule of Criminal Procedure 16(a)(1)(E).  Dkt. 21, at 8-9.  That Rule states that, "[u]pon a defendant's request, the government must permit a defendant to inspect" tangible documents and objects "if the item is within the government's possession, custody, or control and[ ] the item is material to preparing the defense[.]"  However, Rule 16 does not provide a defendant with access to the entirety of the government's case against him.  *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir. 1974).  A document is material under Rule 16 if its "pretrial disclosure will enable a defendant to alter significantly the quantum of proof in his favor."  *United States v. Giffen*, 379 F. Supp. 2d 337, 342 (S.D.N.Y. 2004) (citations omitted).  Conclusory allegations are insufficient to establish materiality, and the burden is on a defendant to make a prima facie showing that a particular

3

document is material to preparation of the defense.  *United States v. Finnerty*, 411 F. Supp. 2d 428, 431 (S.D.N.Y. 2006).

The Defendant also asserts the personnel files "may" contain *Brady* material.  Dkt. 21, at 9-10.  Pursuant to *Brady v. Maryland*, the prosecution must produce "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment."  *Brady*, 373 U.S. 83, 87 (1963).  *Brady* evidence includes evidence that not only affirmatively tends to exculpate a defendant, but also information that impeaches the credibility of the government's witnesses.  *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).  Therefore, "*Giglio* evidence may more properly be thought of as a subset of *Brady* evidence."  *United States v. Siddiqi*, 06 Cr. 377, 2007 WL 549420, at *4 (S.D.N.Y. Feb. 21, 2007) (unpublished).  It is well settled that *Brady* establishes no general right of pretrial discovery.  *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Evanchik*, 413 F.2d 950, 953 (2d Cir. 1969).

The Second Circuit first addressed the question of disclosure of law enforcement witness personnel files in *United States v. Kiszewski*, 877 F.2d 210, 215-16 (2d Cir. 1989).  In *Kiszewski*, the defendant sought the personnel files of two FBI agent witnesses.  *Id*. at 215.  The prosecutor told the Court that in his view the agents' files contained no *Brady* material but mentioned that one of the agents' files contained complaints alleging the agent was "on the take" and had received a reprimand relating to one of the complaints.  *Id*.  The district court denied the defendant's request to either compel an *in camera* review of the agent's personnel file or compel production of the file to the defendant.  *Id*.  The Second Circuit disagreed, stating that because the district court had "only the government's description of the allegations" in the agent's file, it could not determine whether the information "might have created a reasonable probability that the outcome of the trial

would have been different." *Id*. at 216. The Court remanded the case for the district court to conduct an *in camera* review of the file. *Id*.

Since its decision in *Kiszewski*, the Second Circuit has noted that a district court's obligation to conduct an *in camera* review of a personnel file only arises "in some circumstances" and likely only where a defendant "has made a specific request for identified documents or to files directly relating to a key Government witness." *United States v. Leung*, 40 F.3d 577, 582-83, 583 n.1 (2d Cir. 1994) (citing *United States v. Leonard*, 817 F. Supp. 286, 302-03 (E.D.N.Y. 1992) (requiring *in camera* review of personnel file of witness whose credibility is of "overwhelming significance," but denying review of personnel files of other witnesses); *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n.15 (1987) (defendant not entitled to *in camera* review of personnel file "without first establishing a basis for his claim that it contains material evidence")). Other courts within the Second Circuit have similarly held that an *in camera* review of a confidential file requires "some particularized showing of materiality and usefulness." *United States v. James*, No. 02 CR 778 (S-3) (SJ), 2005 WL 8161681, at *11 (E.D.N.Y. Oct. 12, 2005) (unpublished) (permitting *in camera* review of specific government witness' confidential law enforcement file after defendant provided a letter with attached exhibits raising questions about the witness' credibility); *see also United States v. Quinn*, 123 F.3d 1415, 1422 (11th Cir. 1997) (defendant not entitled to *in camera* review or disclosure of personnel files where defendant made no support for contention of materiality); *United States v. Andrus*, 775 F.2d 825, 843 (7th Cir. 1985) (quoting *United States v. Navarro*, 737 F.2d 625, 631 (7th Cir. 1984) ("Mere speculation that a government file may contain *Brady* material is not sufficient to require a remand for *in camera* inspection, much less reversal for a new trial")).

### 2.    Argument

In this case, the Defendant has failed to articulate any basis to demand production of the government's law enforcement witnesses' personnel files, or even *in camera* review of those files. In support of his argument, the Defendant asserts that "certain disciplinary actions may constitute information that is favorable to [the Defendant] and material to guilt or punishment." Dkt. 21, at 10. While *some* disciplinary actions may constitute proper impeachment evidence, the Defendant proffers no information indicating that any of the government's witnesses have been so disciplined. Therefore, the basis for his demand is entirely speculative. The Defendant also asserts that "[b]ecause the entire trial boils down to credibility, the existence of impeachment material or *Brady* material is of the utmost importance." *Id*. But credibility is an issue in any trial, and invoking the fact that disputed theories of the case will be presented to the jury does not automatically warrant disclosure or *in camera* review.

In *Kiszewski*, the Second Circuit did note that "[i]mpeachment of a witness can make the different between acquittal and conviction . . . and this is particularly true in a trial for making false declarations, where credibility is the central issue in the case and the evidence presented at trial consists of opposing stories presented by the defendant and government agents." *Kiszewski*, 877 F.2d at 216. But the Second Circuit's decision to remand for *in camera* review in that case was limited to a single witness' personnel file, not all witnesses' files, and only after it was clear that the specific witness had been disciplined related to a complaint of misconduct. *Id*.; *see also Leung*, 40 F.3d at 582 n.1 (favorably citing cases limiting *in camera* reviews to situations involving specific requests and showings of materiality). Here, the Defendant demands sweeping disclosure of the entire personnel records of all Border Patrol Agent witnesses. Dkt. 21, at 13. He further demands full disclosure of all files directly to the Defendant, not for *in camera* review. *Id*. Such

6

disclosure is not warranted because the Defendant's claims are entirely conclusory and not supported by facts.

First, the Defendant focuses on USBP's investigation and arrest of the Defendant as evidence of lack of credibility. The Defendant asserts that BPAs should have known about the Defendant's pending BIA appeal, that they therefore ignored the appeal in deciding to arrest the Defendant, and as a result their actions were "a deliberate choice to arrest an individual with a pending appeal in direct contravention of the law." Dkt. 21, at 2-4. However, the Defendant overlooks the fact that an alien released on parole can be taken back into custody without a warrant by immigration authorities regardless of the fact of a pending appeal. *See, e.g.*, 8 U.S.C. § 1226(a), (b). While the Defendant could not have been removed while the appeal is pending, he could be arrested pursuant to the BPAs' assessment of the Defendant's individualized circumstances.[1] *See* Government's Motion in Limine, Dkt. 20, at 3-6 (arguing in greater detail that the investigation and arrest of the Defendant was lawful). Because the fact of the BIA appeal has no effect on an arrest determination in these circumstances, what BPAs knew or should have known about the appeal has no impact on their credibility. Even assuming hypothetically that all of the BPAs decided to arrest the Defendant based on an erroneous understanding of a BIA appeal's impact on removability, that suggests at most ignorance of the law, not untruthfulness. The government has found no case—and the Defendant has not cited any—that suggests a court should infer untruthfulness from ignorance of the law or even an unlawful arrest. Furthermore, an officer's subjective understanding of the basis of an arrest is immaterial to its legality. *See, e.g., Devenpeck*

---

[1] The Defendant also insinuates that BPAs and LCP Director Morrow acted improperly by arranging for the Defendant to leave his home for a probation visit. BPAs did not need a warrant to arrest the Defendant, and the Defendant has failed to articulate how staging a ruse to draw the Defendant out of his residence is in any way improper or justifies disclosure of the BPAs' personnel files.

7

*v. Alford*, 543 U.S. 146, 153 (2004) ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action").

The Defendant also suggests that BPAs' credibility is at issue because of the nature of the alleged assault and the issue of what object struck BPA Baize. Dkt. 21, at 6-7. At trial, multiple witnesses, including BPAs, will share what they recall occurred before, during, and after the alleged assault. As the Defendant acknowledges, the question of what actually occurred is a fact issue the jury will be asked to resolve. *Id*. at 7. The existence of multiple perspectives of events from multiple witnesses does not automatically implicate credibility to the degree necessary to justify either *in camera* review or disclosure of personnel files.

Because the Defendant's beliefs about the content of the personnel files are entirely speculative, and because the Defendant's proffered facts and speculative hypotheses fail to implicate credibility to any degree out of the ordinary, this Court should deny the Defendant's demand that the government disclose the personnel files.

## C.    Government's Continuing Compliance with Disclosure Obligations

The Defendant next asserts that he has "serious concerns" about whether the government has complied with its disclosure obligations because the Defendant does not trust Customs and Border Protection ("CBP") to provide impeachment or exculpatory information to the Northern District of New York U.S. Attorney's Office ("USAO"). Dkt. 21, at 11-12. The Court should deny the Defendant's demand for the BPA witnesses' personnel files because the government has complied, and will continue to comply, with its discovery obligations. Baseless and speculative

8

allegations of discovery noncompliance by a criminal defendant do not justify expansion of the government's disclosure obligations.

### 1.    Governing Law and Policy

As noted above, the government has an obligation to disclose to the Defendant exculpatory and impeachment evidence.  *See Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154-55.  In addition to these constitutional obligations, the U.S. Department of Justice ("DOJ") has instituted policy that requires federal prosecutors to adhere to their obligations and provides procedures for disclosure, "intended to promote regularity in disclosure practices, through the reasoned and guided exercise of prosecutorial judgment and discretion by attorneys for the government[.]"[2]  *Justice Manual*, U.S. Dept. of Justice, § 9-5.001(A).  DOJ's policies are not secret and in fact are available publicly on the Internet.[3]

DOJ has instituted a two-step process for identifying and disclosing exculpatory and impeachment evidence relating to law enforcement agent witnesses.  First, a prosecuting entity such as the USAO submits a request to the pertinent law enforcement agency regarding "potential impeachment information relating to an agency employee associated with that case or matter." *Justice Manual*, § 9-5.100(4).  Upon receiving the request, the agency conducts a review, "in accordance with its respective agency plan, for potential impeachment information regarding the identified employee."  *Id*. § 9-5.100(5)(a).  The agency then discloses any impeachment information to the prosecuting entity.  *Id*. § 9-5.100(5)(b).  Impeachment information encompasses

---

[2] The Justice Manual notes that the principles it articulates, "and internal office procedures adopted pursuant to them, are intended solely for the guidance of attorneys for the government.  They are not intended to create a substantive or procedural right or benefit, enforceable at law, and may not be relied upon by a party to litigation with the United States." *Justice Manual*, § 9-27.150.  The government cites to the Justice Manual herein solely to outline its compliance with its constitutional disclosure obligations.

[3] Available online at https://www.justice.gov/jm/justice-manual.

a broad range of conduct, including "on-duty and off-duty conduct"; "any finding of misconduct that reflects upon the truthfulness or possible bias of the employee"; past or pending criminal charges; allegations of misconduct "bearing upon truthfulness, bias, or integrity that is the subject of a pending investigation"; and misconduct that casts substantial doubt upon the accuracy of evidence, including witness testimony. *Id*. § 9-5.100(5)(b), (c). Such information can include both on-duty and off-duty conduct. *Id*. Based on the agency's disclosure, the prosecutor then discloses to the Defendant information necessary to comply with the prosecutor's constitutional obligations, as well as all other information necessary to a fair trial. *Id*. § 9-5.001(b), (c). When the prosecutor is uncertain whether particular information qualifies as impeachment information under *Giglio*; whether it is admissible to impeach under the Federal Rules of Evidence; or when the information does qualify as impeachment information under *Giglio* but the probative value is substantially outweighed by the danger of unfair prejudice, the prosecutor may seek an *ex parte* review and ruling regarding disclosure to the defendant. *See, e.g., United States v. Wolfson*, 55 F.3d 58, 60 (2d Cir. 1995).

CBP is a component of the U.S. Department of Homeland Security ("DHS"). DHS, as contemplated by DOJ, has adopted an agency plan governing disclosure of impeachment information to prosecutors.[4] U.S. Dept. of Homeland Security, "Department Policy Regarding the Disclosure to Prosecutors of Potential Impeachment Information Concerning Department of Homeland Security Witnesses ("*Giglio* Policy"), March 29, 2016 (the "DHS Policy"). The DHS Policy is "intended to set a uniform standard for assuring that all appropriate information is provided to prosecutors in a timely manner" and applies "to all DHS employees." *Id*. at 1. The

---

[4] Available online at https://www.dhs.gov/sites/default/files/publications/mgmt/law-enforcement/mgmt-dir_047-04-policy-disclosure-prosecutors-impeachment-info-dhs-witness.pdf.

DHS Policy is "intended to be consistent with Section 9-5.100" of DOJ's Justice Manual. *Id*. at 2. It acknowledges DHS components' obligation, upon request by a prosecuting entity, to "conduct a review, in accordance with its Component plan, for potential impeachment information regarding the identified employee." *Id*. at 3. Impeachment information to be disclosed essentially mirrors information identified in DOJ's Justice Manual. *Compare id*. at 3-4; *Justice Manual*, § 9-5.100(5)(c). The DHS Policy acknowledges each DHS component agency's continuing duty to disclose impeachment information. DHS Policy, at 6.

Courts have rejected challenges to DOJ's procedure of obtaining impeachment information from law enforcement agencies. In *United States v. Jennings*, a district court granted a defendant's request to require the assigned Assistant U.S. Attorney ("AUSA") to personally review the personnel files of law enforcement officers. *Jennings*, 960 F.2d 1488, 1489 (9th Cir. 1992). The Ninth Circuit reversed, finding that a prosecutor's disclosure obligations do not "require the personal effort demanded of the AUSA by the district court." *Id*. at 1491. Where there was no indication that the government has not or will not comply with its duty faithfully to conduct review of the agents' personnel files," there was no basis to "presume that any illegal conduct must be deterred." *Id*. at 1492. While the Ninth Circuit was sympathetic to the district court's desire to ensure the government's compliance, "the presumption is that official duty will be done, and hence that the procedure instituted by the Department of Justice" will satisfy the government's constitutional obligations. *Id*. "Adherence to this procedure would indicate that the AUSA is fulfilling his responsibility for ensuring government compliance with *Brady*." *Id*.

Similarly, in *United States v. Principato*, a defendant in the Eastern District of New York moved for an order that appeared to demand "personal review by the AUSA of the personnel files of all government-employed government witnesses[.]" *Principato*, No. 01 CR.588 (LMM), 2002

WL 31319931, at *3 (E.D.N.Y. Nov. 10, 2014) (unpublished). The district court noted that no obligation existed within the Second Circuit to require the government, upon request, to examine witnesses' personnel files, let alone that such a review need be personally conducted by the assigned AUSA. *Id*. at *3-4. "Here, the government has acknowledged its obligations under *Brady v. Maryland* and its progeny, represented that it will produce any exculpatory material promptly, and agreed to produce any impeachment material" at the appropriate time. *Id*. at *4. The district court stated this arrangement is standard practice and denied the defendant's motion. *Id*.; *see also United States v. Kayser*, 213 F.3d 644 (Table), 2000 WL 328121, at *2 (9th Cir. March 24, 2000) (Mem. Op.) (district court may not order AUSA to personally conduct a review of testifying law enforcement officers' personnel files); *United States v. Burk*, No. 3:15-cr-00088-SLG-DMS-3, 2016 WL 11709810, at *2 (D. Ala. Sept. 8, 2016) (unpublished) (government permitted to delegate its duties to inquire about exculpatory information to the appropriate agency, "which is then to notify the assigned AUSA if the file contains any *Brady* material").

The second step in DOJ's process for identifying and disclosing exculpatory and impeachment evidence involves a prosecutor asking law enforcement witnesses directly about potential impeachment information. *Justice Manual*, § 9-5.100(1). "Prosecutors should have a candid conversation with each potential investigative agency witness . . . regarding any on-duty or off-duty potential impeachment information." *Id*. Such a discussion is necessary because some potential impeachment material may only be known to the agency employee, and consequently may not be in agency files. *Id*. § 9-5.100(5). If the law enforcement witness discloses potential impeachment information during the candid conversation, prosecutors next assess what appropriate action is warranted based on the information disclosed, "be it producing the material or taking steps to preclude its improper introduction into evidence." *Id*. Such a determination

"can only be made after considering the potential impeachment information in light of the role of the agency witness, the facts of the case, and known or anticipated defenses," among other factors. *Id*. § 9-5.100, Preface.

    2.    **Argument**

The Court should deny the Defendant's motion because the government has complied, and will continue to comply, with its disclosure obligations, and the Defendant has presented no facts or non-speculative allegations to the contrary.  When the government first learned the Defendant sought a jury trial, it requested exculpatory and impeachment information from CBP, pursuant to DOJ and DHS policy, regarding each BPA witness that might conceivably testify at trial.  The government was informed by CBP that, after conducting a review of its personnel files, CBP had nothing to disclose with respect to the identified witnesses.  But the government's obligation did not end there.  The government has also engaged in a "candid conversation" with each prospective witness, pursuant to DOJ policy, and will disclose any appropriate information arising out of those direct inquiries, pursuant to the policies and guidelines outlined in the Justice Manual and relevant caselaw pertaining to *in camera* review.  *See Justice Manual* § 9-5.100; *Wolfson*, 55 F.3d at 60. The government is also aware that its disclosure obligations are continuing ones.

The Defendant asserts, without foundation, that CBP cannot be trusted to make disclosures of exculpatory and impeachment information based on statements of public figures associated with CBP and DHS. Dkt. 21, at 12.  First, the statements in question have nothing to do with this case and relate to ongoing investigations elsewhere.  Additionally, even if the statements in question were untruthful, they do not implicate—and have nothing to do with—CBP's process for disclosure of exculpatory and impeachment information.  Statements in the media by political

13

appointees do not rebut "the presumption . . . that official duty will be done" with respect to disclosures. *Jennings*, 960 F.2d at 1492.

The government will continue to comply with its obligations pursuant to *Brady* and *Giglio* and with DOJ policy.  The Defendant has failed to establish, or even meaningfully allege, any shortcoming by the government that justifies disclosure of the personnel files.

**D.    Conclusion**

The Defendant's assertion that the law enforcement witnesses' personnel files may contain exculpatory or impeachment evidence is entirely speculative. Granting the relief requested here would suggest that every Defendant in every case can audit and oversee the government's *Giglio* and *Brady* disclosure process. That is not the law.  The Defendant's proffered facts do not even implicate credibility to the degree necessary to justify either *in camera* review or disclosure of the personnel files.  Furthermore, the government has complied and will continue to comply with its disclosure obligations.  Based on the foregoing, the Court should deny the Defendant's motion to compel.

Respectfully submitted on this the 4th day of February, 2026.

/s/
TODD BLANCHE
Deputy Attorney General

JOHN A. SARCONE III
Acting United States Attorney

By:

Benjamin A. Gillis
Assistant United States Attorney
Bar Roll No. 704915

14