# EXHIBIT C

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court

In the Matter of

File: [redacted]

| | | |
|---|---|---|
| MARVIN WOTSBELI AGUILAR GARCIA | ) | IN REMOVAL PROCEEDINGS |
| RESPONDENT | ) | Transcript of Hearing |

Before DENISE HOCHUL, Immigration Judge

Date: June 1, 2022

Place: BUFFALO, NEW YORK

Transcribed by Deposition Services, Inc. -3

Official Interpreter:

Language: SPANISH

Appearances:

For the Respondent: JOSE PEREZ

For the DHS: JEFFREY FEWT

JUDGE FOR THE RECORD

Good morning. This is Immigration Judge Denise Hochul in the Immigration Court Buffalo, New York. Today's date is June 1st, 2022. We are before the Court at the removal proceedings, merits hearing for respondent, Marvin Wotsbeli Aguilar Garcia, A[redacted]Respondent is not present. His attorney of record, Mr. Jose Perez appears through telephonic connection. Counsel for the Government, Assistant Chief Counsel, Jeffrey Fewt (phonetic sp.) appears here in Buffalo, New York. The Court has also enlisted the services of an interpreter in the Spanish language to assist the respondent. Ms. Interpreter appears through telephonic connection also.

JUDGE TO MR. PEREZ

Mr. Perez, this matter was scheduled for 10:00 a.m. The Court's 8:30 a.m. hearing ran late so the Court contacted your office approximately 10:09. At that time, Mr. Perez, you indicated that you were still waiting in your office for the arrival of your respondent as he was headed, your client, as he was headed to your office. The Court then thought that we were cut off, called your office again, this was approximately 10:12. At that time, you indicated that your client was still on his way to your office. Moments ago, I called you again at 10:21 and at that time you indicated that your client had not yet arrived. In fact, he was somewhere in Syracuse, he had gotten lost. Has he arrived at your office yet? Mr. Perez, is your client at your office yet? I can't hear you, Mr. Perez.

MR. PEREZ TO JUDGE

Not yet, Your Honor, not yet. He's, he told me that, in a text message that he was lost. So he doesn't drive, he's with a person that is giving him a ride. He's in Syracuse but he's coming in in a few minutes.

JUDGE TO MR. PEREZ

Okay, all right. Well, the case was scheduled at 10:00.

JUDGE TO MR. FEWT

Mr. Fewt, what is the Government's position regarding the respondent's non-appearance to this point?

MR. FEWT TO JUDGE

Your Honor, the case has been scheduled for months now. It was continued I believe in January due to a scheduling conflict, so the respondent had ample notice of today's hearing. I don't question Mr. Perez' representations but I don't think the respondent has a legitimate reason for not being present. It's already 10:30 so I would move to proceed in absentia.

JUDGE TO MR. FEWT

All right, all right.

JUDGE TO MR. PEREZ

Mr. Perez, do you wish to be heard? The Government is moving for an in-absentia order.

MR. PEREZ TO JUDGE

Give me one second, Your Honor. I'm checking my cellphone. Hold on one second.

JUDGE TO MR. PEREZ

Okay.

MR. PEREZ TO JUDGE

Okay, Your Honor, he just told that he's actually three minutes away on the GPS. So, of course, I would respectfully request not to proceed in absentia. The respondent is coming. I know that he's late. The Court was also a few minutes late so, you know, just to put it all on him, the fact that he's not, you know, there is a huge rain

here in Syracuse right now, there was storm advisal earlier today, electricity went down so I would respectfully request that you give us a few more minutes.

JUDGE TO MR. PEREZ

Well, it's 10:28, Mr. Perez. I will wait until 10:31 which is three minutes. If he's not at your office by that time, I will proceed in absentia. But I ask that you remain on the line because now it's just three minutes from this moment. So let me know, 10:31 if he is there and if he's not then we will proceed in in absentia.

MR. PEREZ TO JUDGE

Yes, Your Honor. I'm going to remain here. When he shows up, I will tell you in a second.

JUDGE TO MR. PEREZ

Well, again, I will proceed in absentia if he's not there in now two minutes.

MR. PEREZ TO JUDGE

Okay, thank you, Your Honor.

JUDGE TO MR. PEREZ

All right, thank you.

(OFF THE RECORD)

(ON THE RECORD)

JUDGE FOR THE RECORD

Back on the record. The respondent has now arrived at the office of Mr. Perez. At this time, I will then swear in our interpreter.

JUDGE TO INTERPRETER

Ms. Interpreter, do you solemnly swear or affirm that you will faithfully, completely, and accurately interpret from English to Spanish, Spanish to English to the best of your abilities?

INTERPRETER TO JUDGE

I do.

JUDGE TO INTERPRETER

Thank you.

JUDGE TO MR. AGUILAR GARCIA

Through the interpreter, Mr. Aguilar Garcia, if you would raise your right hand, I will swear you in.

MR. PEREZ TO JUDGE

Your Honor, we're still hearing you on the other line, but I called you from this other line because I was calling you initially from my cellphone and I now I'm calling from the office line.

JUDGE TO MR. PEREZ

Okay. Has the respondent heard the interpreter?

MR. PEREZ TO JUDGE

Yes, Your Honor, he did.

JUDGE TO MR. PEREZ

Okay, all right.

JUDGE TO MR. AGUILAR GARCIA

Then Mr. Aguilar Garcia do you solemnly swear or affirm to tell the truth, the whole truth and nothing but the truth in these removal proceedings?

MR. AGUILAR GARCIA TO JUDGE

Yes.

JUDGE TO MR. AGUILAR GARCIA

All right, sir, you may put your hand down. Sir, do you continue to live at [redacted] Copenhagen, New York?

MR. AGUILAR GARCIA TO JUDGE

Yes.

JUDGE TO MR. AGUILAR GARCIA

Is your phone number area code 315-[redacted]?

MR. AGUILAR GARCIA TO JUDGE

Yes.

JUDGE TO MR. AGUILAR GARCIA

Thank you.

JUDGE FOR THE RECORD

All right. We're scheduled for a merits hearing today for the respondent's respective applications for asylum, withholding of removal, relief under the Convention Against Torture. There have been several documentary submissions made. I will identify them at this time. Exhibit 1 continues to be the Notice to Appear dated October 10th, 2017. Pleadings were entered February 7th, 2018, wherein all factual allegations were admitted. The charge of removal was conceded; therefore, removability is not at issue. The Court designated Guatemala as the country of removal. Exhibit 2 is respondent's form I-589 received by the Court December 28th, 2019. Exhibit 3 is the Department of Homeland Security's evidence received on April 16th, 2019, which consists of a from I-213. That is the extent of all the documentary evidence which has been submitted to the Court.

JUDGE TO MR. PEREZ

Mr. Perez, are there any additional documents that you have submitted to the Court in this cause?

MR. PEREZ TO JUDGE

No, Your Honor.

JUDGE TO MR. PEREZ

All right.

JUDGE TO MR. FEWT

And how about for the Government, Mr. Fewt?

MR. FEWT TO JUDGE

No, Your Honor.

JUDGE TO MR. FEWT

All right.

JUDGE TO MR. PEREZ

Now with respect to the respondent's form I-589, Mr. Perez, are there any changes to be made before I ask the respondent to swear to the truthfulness of its contents as well as his knowledge of the penalties associated with filing a frivolous application?

MR. PEREZ TO JUDGE

No, Your Honor.

JUDGE TO MR. PEREZ

All right. Mr. Perez, however, the particular social group is checked as being the protected ground. You have not submitted an identification of the perimeters of a particular social group. What particular social group or groups is the respondent claiming that he is a member of?

MR. PEREZ TO JUDGE

Your Honor, let me pull it up. I thought that I had sent on the, no that's okay, let me just pull that up on my file.

JUDGE TO MR. PEREZ

Okay.

MR. PEREZ TO JUDGE

Your Honor, the Guatemalan young men whose family has been targeted by criminal organizations.

JUDGE TO MR. PEREZ

Guatemalan men whose family --

MR. PEREZ TO JUDGE

Young men whose family has been targeted by criminal organizations.

JUDGE TO MR. PEREZ

Okay. So young men whose family has been targeted by criminal organizations. Okay, all right.

JUDGE TO MR. FEWT

Mr. Fewt, were you able to get that?

MR. FEWT TO JUDGE

Yes, Your Honor.

JUDGE TO MR. FEWT

All right. All right then.

JUDGE TO MR. AGUILAR GARCIA

At this time, Mr. Aguilar Garcia, I'm going to ask you to swear or affirm to truthfulness of the contents of your application for relief before the Court. So, sir, do you swear or affirm that you are familiar with the contents of your application for asylum, withholding of removal, relief under the Convention Against Torture and that all the information contained in that application is true to the best of your knowledge and that all the information either came directly from you or at your request. Do you so swear or affirm?

MR. AGUILAR GARCIA TO JUDGE

Yes.

JUDGE TO MR. AGUILAR GARCIA

All right. Do you also swear or affirm that you are aware of the following penalty? That if it is determined that you have knowingly made a frivolous application for asylum that means an application which contains false information that the penalty for doing so will be that you will be permanently ineligible for any benefits under the Immigration and Nationality Act and also that you may not avoid a frivolous finding simply because someone advised you to provide false information in your asylum application. Do you swear or affirm that you are aware of that penalty?

MR. AGUILAR GARCIA TO JUDGE

Yes.

JUDGE TO MR. AGUILAR GARCIA

All right, thank you, sir. All right, now, Mr. Aguilar Garcia, in a moment you are going to be asked questions about your applications before the Court. First from your attorney, Mr. Perez, then by counsel for the Government, Mr. Fewt, possibly by myself but I wish to remind you that you remain under oath so all your answers to the questions must be truthful. Do you understand?

MR. AGUILAR GARCIA TO JUDGE

Yes.

JUDGE TO MR. AGUILAR GARCIA

All right. Because we have an interpreter, when you answer a question answer in short sentences, pause, wait for Ms. Interpreter to interpret and then if there's more to your answer, you'll be allowed to continue with your answer.

MR. AGUILAR GARCIA TO JUDGE

Yes.

JUDGE TO MR. AGUILAR GARCIA

All right, thank you.

JUDGE TO MR. PEREZ

Mr. Perez, are there any opening statements?

MR. PEREZ TO JUDGE

No.

JUDGE TO MR. PEREZ

All right.

JUDGE TO MR. FEWT

And how about for the Government, Mr. Fewt?

MR. FEWT TO JUDGE

No, Your Honor.

JUDGE TO MR. FEWT

All right.

JUDGE TO MR. PEREZ

All right, Mr. Perez, then you may begin with your direct examination.

MR. PEREZ TO JUDGE

Yes.

MR. PEREZ TO MR. AGUILAR GARCIA

Marvin, where were you born?

INTERPRETER TO JUDGE

The interpreter did not hear the first town, Guatemala.

JUDGE TO INTERPRETER

All right. If you would ask him to repeat that for you, Ms. Interpreter.

MR. AGUILAR GARCIA TO MR. PEREZ

San Miguel [indiscernible] Guatemala.

MR. PEREZ TO MR. AGUILAR GARCIA

And did you live your whole life in Guatemala before coming to the United States?

MR. AGUILAR GARCIA TO MR. PEREZ

Yes.

MR. PEREZ TO MR. AGUILAR GARCIA

And when did you come to the United States?

MR. AGUILAR GARCIA TO MR. PEREZ

In May 2012.

MR. PEREZ TO MR. AGUILAR GARCIA

And when you came how did you enter the United States?

MR. AGUILAR GARCIA TO MR. PEREZ

I entered as an immigrant through the desert.

MR. PEREZ TO MR. AGUILAR GARCIA

Did you have any paperwork, any visa or any authorization to enter the United States?

MR. AGUILAR GARCIA TO MR. PEREZ

No.

MR. PEREZ TO MR. AGUILAR GARCIA

Did you present to any agent, ICE Officer or Border Patrol Agent at the time that you crossed?

MR. AGUILAR GARCIA TO MR. PEREZ

No.

MR. PEREZ TO MR. AGUILAR GARCIA

After you entered in May of 2012, have you left the United States?

MR. AGUILAR GARCIA TO MR. PEREZ

No.

MR. PEREZ TO MR. AGUILAR GARCIA

Is it fair to say that you been in the United States for about 10 years?

MR. AGUILAR GARCIA TO MR. PEREZ

Yes.

MR. PEREZ TO MR. AGUILAR GARCIA

When you entered in May of 2012, had you entered previously the United States?

MR. AGUILAR GARCIA TO MR. PEREZ

No.

MR. PEREZ TO MR. AGUILAR GARCIA

When you came in May of 2012, who do you come with?

MR. AGUILAR GARCIA TO MR. PEREZ

Will you please repeat that?

MR. PEREZ TO MR. AGUILAR GARCIA

Yes. Who did you come with to the United States?

MR. AGUILAR GARCIA TO MR. PEREZ

I arrived at my sister's.

MR. PEREZ TO MR. AGUILAR GARCIA

Okay. Now let me ask you this. Are you married?

MR. AGUILAR GARCIA TO MR. PEREZ

No, I am not married but I have a girlfriend and I have a son who was born here.

MR. PEREZ TO MR. AGUILAR GARCIA

And what is the legal status of your girlfriend?

MR. AGUILAR GARCIA TO MR. PEREZ

I don't know.

MR. PEREZ TO MR. AGUILAR GARCIA

Now you mentioned that you have a child that was born in the United States. When was he born?

MR. AGUILAR GARCIA TO MR. PEREZ

He was born in Watertown, New York.

MR. PEREZ TO MR. AGUILAR GARCIA

And when was that?

MR. AGUILAR GARCIA TO MR. PEREZ

Last year.

MR. PEREZ TO MR. AGUILAR GARCIA

Do you know the date?

MR. AGUILAR GARCIA TO MR. PEREZ

[redacted] 2021.

MR. PEREZ TO MR. AGUILAR GARCIA

So he's 11 months old?

MR. AGUILAR GARCIA TO MR. PEREZ

Yes, just turned a year.

MR. PEREZ TO JUDGE

Your Honor, if I may that would have been a change that we would need include in page two of his asylum petition on page two, part A too. He indicated that he didn't have any children, of course, the asylum petition was written and signed by him in

2019. That was two years prior to his son being born and, you know, because of the fact that he was running late today I assume that was not able to tell me that before. But, you know, we would like to move to amend the page two to include the son in his petition.

JUDGE TO MR. PEREZ

All right. And the date of birth is [redacted] 2021, born in Watertown, New York, correct?

MR. PEREZ TO MR. AGUILAR GARCIA

Correct.

JUDGE TO MR. PEREZ

All right.

JUDGE TO MR. FEWT

Any objection to that amendment, Mr. Fewt?

MR. FEWT TO JUDGE

No objection.

JUDGE TO MR. FEWT

All right.

JUDGE TO MR. PEREZ

Mr. Perez, if you would also identify the name of the child because at this time there's just the reflection of the fact that he the respondent has a child in the United States, a son.

MR. PEREZ TO JUDGE

Will do, Your Honor.

JUDGE TO MR. PEREZ

All right.

MR. PEREZ TO JUDGE

Thank you.

MR. PEREZ TO MR. AGUILAR GARCIA

What is the name of your child?

MR. AGUILAR GARCIA TO MR. PEREZ

[redacted] (phonetic sp.), yes, it's a boy.

MR. PEREZ TO MR. AGUILAR GARCIA

Now let me ask you this, when you left Guatemala were there any reasons why you left and came to the United States?

MR. AGUILAR GARCIA TO MR. PEREZ

Because I was afraid that something would happen to me.

MR. PEREZ TO MR. AGUILAR GARCIA

What do you mean by that? What could happen to you?

MR. AGUILAR GARCIA TO MR. PEREZ

Well, because in Guatemala over there my father had been military and he had many problems, he died and supposedly he had hurt many people over there and their children wanted to hurt me. In fact, the son of one of --

INTERPRETER TO JUDGE

I'm sorry.

MR. AGUILAR GARCIA TO MR. PEREZ

In fact, the son of one of the persons that my father had killed wanted to hurt me.

MR. PEREZ TO MR. AGUILAR GARCIA

Okay. So let me understand this. You mentioned that your father was in the military.

MR. AGUILAR GARCIA TO MR. PEREZ
Yes.
MR. PEREZ TO MR. AGUILAR GARCIA
Do you know for how long?
MR. AGUILAR GARCIA TO MR. PEREZ
No.
MR. PEREZ TO MR. AGUILAR GARCIA
Do you know where your father is now?
MR. AGUILAR GARCIA TO MR. PEREZ
He's deceased.
MR. PEREZ TO MR. AGUILAR GARCIA
When did he die?
MR. AGUILAR GARCIA TO MR. PEREZ
About 20 years ago.
MR. PEREZ TO MR. AGUILAR GARCIA
Okay. And how did he die?
MR. AGUILAR GARCIA TO MR. PEREZ
Well, he was with some friends, and I guess he had been poisoned because when they found him he had foam in his mouth. Well, and that was like one of the biggest fears for me that that's something like that would happen to me and, of course, you know the fact that brought me here was the threat of that person.
MR. PEREZ TO MR. AGUILAR GARCIA
Okay, now when you say that your father killed someone, what do you mean by that?
MR. AGUILAR GARCIA TO MR. PEREZ

Well, there's stories that have been told with co-workers, the people that were around him.

MR. PEREZ TO MR. AGUILAR GARCIA

Well, you said with his colleagues or friends what did you mean by that?

MR. AGUILAR GARCIA TO MR. PEREZ

Well, he was a member of the military but also a member of criminal activity, that's why he was having a lot of problems.

MR. PEREZ TO MR. AGUILAR GARCIA

So let me understand this. Do you know by the time that he was dead, that he was killed, was he still in the military or was he part of some criminal organization?

MR. AGUILAR GARCIA TO MR. PEREZ

Well, he had already retired from the military and, but he belonged to a criminal organization.

MR. PEREZ TO MR. AGUILAR GARCIA

Were you a member of his organization?

MR. AGUILAR GARCIA TO MR. PEREZ

No.

MR. PEREZ TO MR. AGUILAR GARCIA

Now what other reasons led you to come to the United States?

MR. AGUILAR GARCIA TO MR. PEREZ

Well, after all those problems then I had members of the 18th Street gang wanted me to join them, but I said no.

MR. PEREZ TO MR. AGUILAR GARCIA

And so what happened when you said no?

MR. AGUILAR GARCIA TO MR. PEREZ

Well, I mean, they threatened me. They said that they were going to kill me and either you're with them or you're with them. So I was afraid and I left.

MR. PEREZ TO MR. AGUILAR GARCIA

So what exactly did they, or the members of the Mara 18 tell you?

MR. AGUILAR GARCIA TO MR. PEREZ

Well, since I had already turned 18 and I was 18 years of old, I'm sorry, of age at that time they wanted me to join. They threatened me if I didn't, they said that if I didn't join them, they will kill me and well, watched what happened to my cousin. They cut his leg. And the one that cut my cousin's leg was the neighbor from the 18th Street gang. And I don't know who it was that cut his leg off but it was entire criminal group was nearby.

MR. PEREZ TO MR. AGUILAR GARCIA

What's the name of your cousin?

MR. AGUILAR GARCIA TO MR. PEREZ

His name is [redacted] (phonetic sp.).

MR. PEREZ TO MR. AGUILAR GARCIA

Is there any reason, any other reason that led you to come to the United States?

MR. AGUILAR GARCIA TO MR. PEREZ

Well, if one did not reject joining them, I mean, they will kill you or cut you up and that's why I decided to come.

MR. PEREZ TO MR. AGUILAR GARCIA

Now when you came to the United States you did not apply for asylum right away, correct?

MR. AGUILAR GARCIA TO MR. PEREZ

No, I didn't know since I come from a small town, I was ignorant as to all the laws here. Well, and if I were to return and go back to Guatemala, I mean, those countries they're just full of corruption and a lot of gangs. And the gangs control the police so you can't go to any authority because they're under the gang's power.

MR. PEREZ TO MR. AGUILAR GARCIA

So if you were to be removed from the United States will you be able to seek safe haven from the police or protection from the police if these criminal members approach you again?

MR. AGUILAR GARCIA TO MR. PEREZ

No, because they work for the police, and they control everything.

MR. PEREZ TO MR. AGUILAR GARCIA

What about if you were to move to a different location and relocate in another town in Guatemala that is not San Miguel? Will you be able to be safe then there?

MR. AGUILAR GARCIA TO MR. PEREZ

No absolutely not, everywhere is full of gangs. Well, if I am returned then I know for a fact that I'm going to be hurt or killed and I would definitely come back because I feel, come back here because I feel safe here and because my son is here as well, and I would not want to expose him to the dangers over there.

MR. PEREZ TO MR. AGUILAR GARCIA

What is the name, what was your father's name?

MR. AGUILAR GARCIA TO MR. PEREZ

[redacted] (phonetic sp.). Yes.

MR. PEREZ TO MR. AGUILAR GARCIA

Now if you were to return to Guatemala is there any organization other the police that may protect you? I understand that there are organizations called cocozia (phonetic sp.) and other means community of organizations, will you be able to seek protection from them?

MR. AGUILAR GARCIA TO MR. PEREZ

No, absolutely not. I mean the organizations there are to benefit the whole town they would not be able to protect us from all the problems.

MR. PEREZ TO JUDGE

That's all I have for the moment, thank you.

JUDGE TO MR. PEREZ

All right, thank you. Mr. Perez, are you also or is your client also seeking post-conclusion voluntary departure?

MR. PEREZ TO JUDGE

I don't believe so, no.

JUDGE TO MR. PEREZ

All right, all right, thank you, all right, all right.

JUDGE TO MR. FEWT

Mr. Fewt, cross-examination.

MR. FEWT TO JUDGE

Yes, Your Honor. May I proceed?

JUDGE TO MR. FEWT

Yes, thank you.

MR. FEWT TO MR. AGUILAR GARCIA

Sir, you said that the son of a person your father killed wanted to hurt you, is that right?

MR. AGUILAR GARCIA TO MR. FEWT

Yes.

MR. FEWT TO MR. AGUILAR GARCIA

What was the name of that person who wanted to hurt you?

MR. AGUILAR GARCIA TO MR. FEWT

I don't know his name.

MR. FEWT TO MR. AGUILAR GARCIA

Did that person ever physically hurt you?

MR. AGUILAR GARCIA TO MR. FEWT

Well, he is from the community. He would always harass me, harass me violently, threatening me and he said, he always said he was going to kill me that's why I left.

INTERPRETER TO JUDGE

The interpreter is going to ask for a repetition.

JUDGE TO INTERPRETER

All right.

INTERPRETER TO JUDGE

Oh, I'm sorry, Your Honor.

JUDGE TO INTERPRETER

No, that's fine, thank you.

MR. AGUILAR GARCIA TO MR. FEWT

So I don't know his name, I just, his real name, I just know what they call him, his nickname, is [redacted] phonetic sp.).

JUDGE TO MR. AGUILAR GARCIA

What is the nickname?

MR. AGUILAR GARCIA TO JUDGE

[redacted]

INTERPRETER TO JUDGE

[redacted] I'm sorry.

JUDGE TO INTERPRETER

[redacted]

INTERPRETER TO JUDGE

The interpreter heard [redacted]

JUDGE TO INTERPRETER

[redacted]

INTERPRETER TO JUDGE

S as in Sally that's what the interpreter heard.

JUDGE TO INTERPRETER

[redacted] all right, thank you.

INTERPRETER TO JUDGE

S, Your Honor, as in Sally.

JUDGE TO INTERPRETER

[redacted] thank you.

MR. FEWT TO MR. AGUILAR GARCIA

Well, did this person ever physically harm you, sir?

MR. AGUILAR GARCIA TO MR. FEWT

Yeah, I mean, he would hit me, and I would flee because I was very afraid that he would end up killing me.

MR. FEWT TO MR. AGUILAR GARCIA

How many times did he hit you?

MR. AGUILAR GARCIA TO MR. FEWT

I couldn't tell you how many, it was several times.

MR. FEWT TO MR. AGUILAR GARCIA

Did you need medical attention after any of those incidents?

MR. AGUILAR GARCIA TO MR. FEWT

Well, I did need it but I'm from a small town and I did require medical attention but since its a small town and all that there weren't many resources so my mom would have to, you know, give me treatment but, you know, I would go and file a report but then people would say who want to file a report against those type of people.

MR. FEWT TO MR. AGUILAR GARCIA

Who did you file a report with?

MR. AGUILAR GARCIA TO MR. FEWT

Again please.

MR. FEWT TO MR. AGUILAR GARCIA

Who did you file a report with?

MR. AGUILAR GARCIA TO MR. FEWT

Well with the neighbors, I mean, I would ask them if they could help me out and they would say well who's going to get involved with those types of people so they would ignore me.

MR. FEWT TO MR. AGUILAR GARCIA

All right. And you said that members of the 18th Street gang threatened you, is that right?

MR. AGUILAR GARCIA TO MR. FEWT

Yes.

MR. FEWT TO MR. AGUILAR GARCIA

And how many times was it that they threatened you?

MR. AGUILAR GARCIA TO MR. FEWT

Several times.

MR. FEWT TO MR. AGUILAR GARCIA

Did the gang ever physically harm you?

MR. AGUILAR GARCIA TO MR. FEWT

Well, yes, I mean, when they would come around to ask me if I wanted to join them, they would come and they would show up and they would punch me or push me and they ask me if I was ready to join them and I would just take off and run from there.

MR. FEWT TO MR. AGUILAR GARCIA

Did you, go ahead.

MR. AGUILAR GARCIA TO MR. FEWT

Well, they would always threaten me saying that they were going to kill me and I'm just afraid that they, that they would set their threats, I'm sorry, that they would continue threatening me and eventually hurt me.

MR. FEWT TO MR. AGUILAR GARCIA

Okay. The times that they punched and pulled you, did you get hurt?

MR. AGUILAR GARCIA TO MR. FEWT

Well, there were, you know, they would hit me, they would leave bruises and stuff but no because no.

MR. FEWT TO MR. AGUILAR GARCIA

Did you, going back to [redacted] did you report [redacted] o the police?

MR. AGUILAR GARCIA TO MR. FEWT

No, it was always I would ask if the community, I didn't want, you know,

they would, when I would ask for help, they would say that they did not want to be involved with those problems.

MR. FEWT TO MR. AGUILAR GARCIA

Why didn't you report it to the police?

MR. AGUILAR GARCIA TO MR. FEWT

Because the police don't help and they, one would result, the results would be ending up dead and I didn't want to end up dead. Well, and I didn't know if he was from an organization like a gang organization so if I were to report him, he could kill me or kill the person that would report him to the police.

MR. FEWT TO MR. AGUILAR GARCIA

When was it that you were having these problems with [redacted]?

MR. AGUILAR GARCIA TO MR. FEWT

I'm sorry will you please repeat.

MR. FEWT TO MR. AGUILAR GARCIA

What year was it that you had these problems with [redacted]

MR. AGUILAR GARCIA TO MR. FEWT

Well, it was prior to me coming here during the time I was over there.

MR. FEWT TO MR. AGUILAR GARCIA

Okay, do you know the year?

MR. AGUILAR GARCIA TO MR. FEWT

It was around 2008, 2010.

MR. FEWT TO MR. AGUILAR GARCIA

All right.

MR. AGUILAR GARCIA TO MR. FEWT

It was one of those years prior for me, prior to me coming here.

MR. FEWT TO MR. AGUILAR GARCIA

All right.

MR. AGUILAR GARCIA TO MR. FEWT

And I came in 2012.

MR. FEWT TO MR. AGUILAR GARCIA

Right. So if it happened to you in 2008 or 2010 why did you wait until 2012 to come to the United States?

MR. AGUILAR GARCIA TO MR. FEWT

I don't remember exactly when it was, but it was the attacks and the threats got stronger that's when I came here.

MR. FEWT TO MR. AGUILAR GARCIA

All right, well again you said that it happened with [redacted]n 2008 or 2010 so why did you wait until 2012 to come to the U.S.?

MR. AGUILAR GARCIA TO MR. FEWT

I didn't give an exact date; I just gave an estimate as to the time when that occurred. That's why I said around 2008, 2010, it was before me coming here. But I can't really give an exact date.

MR. FEWT TO MR. AGUILAR GARCIA

Now you have family in Guatemala still, right?

MR. AGUILAR GARCIA TO MR. FEWT

Well, I just have my mother and one sister.

MR. FEWT TO MR. AGUILAR GARCIA

And your mom knows what happened too in Guatemala regarding Hans, right?

MR. AGUILAR GARCIA TO MR. FEWT

Yes, but normally they don't really mess with women or mothers, it's just with men.

MR. FEWT TO MR. AGUILAR GARCIA

And does your mom know what happened to you in Guatemala with regard to the threats you received from the gang?

MR. AGUILAR GARCIA TO MR. FEWT

Yes, that's the reason why she sent me here.

MR. FEWT TO MR. AGUILAR GARCIA

Do you still talk with your mother?

MR. AGUILAR GARCIA TO MR. FEWT

Well, yes, we still, we do have contact with each other, she's my mother.

MR. FEWT TO MR. AGUILAR GARCIA

And did you ask her to submit anything such as a letter to support your case that's in court?

MR. AGUILAR GARCIA TO MR. FEWT

Well, she didn't see what was really happening to me when I was being attacked by the gang. So she really couldn't say anything about it and yes, I did tell her about the letter. Well, I mean, the attorney told me that since she was not a, she wasn't present when that stuff occurred that we couldn't use [indiscernible]. And they were things that I was the one that mentioned to her.

MR. FEWT TO JUDGE

All right, no further questions, Your Honor.

JUDGE TO MR. FEWT

Thank you, Mr. Fewt.

JUDGE TO MR. PEREZ

Mr. Perez, any redirect examination?

MR. PEREZ TO JUDGE

No, Your Honor, I think I'm good. Thank you.

JUDGE TO MR. PEREZ

All right, all right then. Then I have no questions of the respondent. Mr. Perez, at this time are you asking that the I-589 be admitted into the record?

MR. PEREZ TO JUDGE

Yes, Your Honor.

JUDGE TO MR. FEWT

All right any objection, Mr. Fewt?

MR. FEWT TO JUDGE

No objection.

JUDGE TO MR. FEWT

All right.

JUDGE FOR THE RECORD

The Court is also going to take administrative notice of the most current Country Reports also for the country of Guatemala issued by the Department of State.

JUDGE TO MR. FEWT

Mr. Fewt, are you moving into evidence Government's Exhibit 3 which is the form I-213 submitted April 16th, 2019?

MR. FEWT TO JUDGE

Yes, Your Honor.

JUDGE TO MR. FEWT

All right.

JUDGE TO MR. PEREZ

Any objection, Mr. Perez, to inclusion in the record of that submission?

MR. PEREZ TO JUDGE

No, Your Honor.

JUDGE TO MR. PEREZ

All right.

JUDGE FOR THE RECORD

That is also admitted into the record, then.

JUDGE TO MR. PEREZ

At this time, Mr. Perez, do you rest?

MR. PEREZ TO JUDGE

Yes, Your Honor, I do.

JUDGE TO MR. PEREZ

All right.

JUDGE TO MR. FEWT

And does the Government rest also?

MR. FEWT TO JUDGE

Yes, Your Honor.

JUDGE TO MR. FEWT

All right.

JUDGE TO MR. PEREZ

Mr. Perez, any closing arguments?

MR. PEREZ TO JUDGE

Yes, Your Honor. At this time, we would like to respectfully submit that the respondent in this case is a refugee as defined under Section 101(a)(42) and, therefore, he should qualify as an asylum seeker under Section 208 because he's a person or

refugee that is unwilling or unable to return to his country of Guatemala because he has not only suffered past persecution but has also a well-founded fear of persecution. And I would like to point out one specific protected ground for that which is not only the Convention Against Torture which I will address in a minute but also the membership in a particular social group which I defined as being Guatemalan young men that have been targeted by criminal organizations. And I did not specifically ask or delineate the group as a refusal of gang membership because it has been found to be not a cognizable social group but in this particular instance the fact that he meets each of the characteristics of the group that I delineate as being a man, young, Guatemalan, and also afraid of the criminal organization we believe that that's enough to meet the threshold to be sufficiently particular and to be cognizable. In addition to that, we believe that even though it may seem that private actors like this [redacted] would have been the person that was causing the harm for the respondent that we respectfully submit that that's not the case. It's all about [indiscernible] criminal organizations like the Mara 18 that controls the town, controls the area, controls the community and therefore the respondent was subject to three different set of circumstances in which he was the victim of these criminal organizations that are not, and I'm not claiming that the government is the one that will inflict torture, inflict harm on the respondent but instead their unwillingness or the blindness that the government cannot control these criminal groups that it should be imputed into that responsibility. And the three set of circumstances that I wanted to mention was, is the first, the fact that his father allegedly was killing people while either being in the military or later as a member of Mara 18 or these criminal organizations that caused the respondent to be exposed to these threats by Mara 18 also to do things to him. But in addition to that the killing of his father that caused the respondent to flee to the United States is also another set of circumstances

that were put in motion by these criminal organizations. And the fact that also his cousin was actually stabbed, I think the respondent testified that he was cut in his leg so the stabbing by this Mara 18 group by declining that type of join enterprise with his own cousin also is a different set of circumstances put in motion by this criminal group. And finally, the fact that this [redacted] was also threatening and beating the respondent on occasions, also the respondent credibly testified that he had probably very well been a member, could have been a member of the Mara 18 as well. And so it's all those set of circumstances that were colluded by the criminal organization, the Mara 18, that controls not only the community but also as the respondent testified also controls the police and there is no safe haven where the respondent can actually go. We respectfully submit that even though the one-year deadline may not be [indiscernible] because he didn't provide any proof that, you know, the threats continue to this day or that he filed an asylum petition in 2013, we respectfully submit that his testimony saying that the problems that persist in Guatemala shouldn't be used as an excuse but even if Your Honor is not willing to accept the one-year deadline then we respectfully submit that he qualifies for relief under the Convention Against Torture and under withholding of removal as well. As Your Honor is fully aware the attorney general or in this case an order of deportation should not be entered for someone that believes that his life or freedom will be threatened on account of one of the particular social groups or the protected ground. In this case, the particular social group but as well as on the protection that provides the Convention Against Torture. And case law has been already established and the Convention Against Torture itself establish that a person should not be removed when it is more likely than not that he or she would be in danger of being subjected to torture. And case law has satisfied that torture doesn't necessarily mean that the government is going to commit the torture but that if the government

unwillingness or inability to protect that person that the government torture is imputed and therefore relief should be found. It's our position, Your Honor, that you should at this time order that relief should be granted. Thank you.

JUDGE TO MR. PEREZ

Thank you, Mr. Perez.

JUDGE TO MR. FEWT

Mr. Fewt.

MR. FEWT TO JUDGE

Thank you, Your Honor. DHS would respectfully oppose the applications starting with the respondent's asylum application. It's untimely, he in entered in 2012, he didn't file the application until 2019, seven years later. He hasn't established that any exception to the one-year filing deadline applies. With respect to his request for withholding of removal under the INA, he hasn't met the higher standard of proof that's required for that relief. He hasn't submitted any evidence outside the I-589 or his testimony today, no corroborating evidence. He testified that his mother is aware of what happened to him with the harm he experienced by [redacted] and he still communicates with his mother but hasn't submitted any evidence from her or anyone else to support his claims. At any rate, he hasn't established harm rising to the level of persecution, past persecution or to have well-founded fear of future persecution. It's mostly threats that the respondent testified to and threats generally don't rise to the level of persecution. He did experience some minor physical harm but nothing that would have required medical treatment by a doctor or at a hospital or anything like that. He testified that this individual, [redacted] harmed him in 2008 or 2010 and yet he didn't come to the United States until 2012. He did try to, it seems back track a little bit from the testimony saying that he wasn't exactly sure when it was that [redacted] harmed him, but

he initially did say 2008, 2010 and then he didn't come to the U.S. as noted until 2012. He hasn't established persecution on the account of a protected ground. There's no nexus to begin with resisting gangs generally isn't a cognizable particular social group under the BIA decision in Matter of S-E-G- and with regard to nexus I would note that with regard to the harm that the respondent said he experienced from [redacted] he testified that [redacted] could be in a gang he didn't even say that he was in fact in a gang. So if particular group that's being proffered is those who are resisting gang membership that wouldn't even apply with regard to the harm that he testified he experienced by [redacted] And lastly with regard to withholding, there's no or insufficient evidence at least that Guatemalan government is unable or unwilling to protect the respondent from private actors. He didn't report the incident that happened with Hans to the police. There's no testimony that he reported the incidents involving the gang to the police. So there's insufficient evidence that the government of Guatemala would be unable or unwilling to protect him from these private actors who threatened the respondent. And lastly the request for relief pursuant to the Convention Against Torture and its regulations that are filed for similar reasons, the respondent hasn't shown that it's more likely than not he'll be tortured if he's returned Guatemala. He experienced some threats and some minor physical harm but nothing that would rise to the level torture as that term is used under the Convention Against Torture and the regulations. And similarly similar to how his withholding claim fails, his withholding under the INA claim fails as his CAT fails as well because there's no evidence that the Guatemalan government would turn a blind eye to these private actors whom the respondent says harmed him in Guatemala.

JUDGE TO MR. FEWT

Thank you, Mr. Fewt.

JUDGE FOR THE RECORD

All right, at this time the Court is going to issue an oral decision.

JUDGE TO MR. PEREZ

Mr. Perez, do you waive simultaneous interpretation of my oral decision?

MR. PEREZ TO JUDGE

Yes, Your Honor, as long as you give me [indiscernible] with the translator no problem with that.

JUDGE TO MR. PEREZ

All right, yes. I will sum it up my decision for the translator, yes, thank you. Through the translator for the respondent.

<u>JUDGE RENDERS ORAL DECISION</u>

JUDGE TO MR. AGUILAR GARCIA

Through the interpreter, Mr. Aguilar Garcia, I have listened carefully to your testimony today at the hearing. I listened carefully to the arguments made by your attorney and the arguments made by counsel for the Government. I have found that you have not established your eligibility for the relief of asylum, withholding of removal, relief under the Convention Against Torture. Although, I have found you to be a credible witness, a truthful witness, I find that you have not established past persecution or a well-founded fear of future persecution in Guatemala on account of your membership in a particular social group. Therefore, sir, I have ordered your removal from the United States to the country of Guatemala based on the Government's charge of removal in the Notice to Appear issued to you. Do you understand my decision, sir?

MR. AGUILAR GARCIA TO JUDGE

Yes.

JUDGE TO MR. AGUILAR GARCIA

All right. Now, sir, you do have the right to appeal my decision to the

Board of Immigration Appeals. And in a moment, I'm going to ask your attorney, Mr. Perez, whether or not he is reserving your right to appeal my decision to the Board of Immigration Appeals.

JUDGE TO MR. PEREZ

Mr. Perez, do you reserve the respondent's right to appeal my decision to the Board of Immigration Appeals?

MR. PEREZ TO JUDGE

Yes, Your Honor, I do.

JUDGE TO MR. PEREZ

All right.

JUDGE TO MR. AGUILAR GARCIA

All right, Mr. Aguilar Garcia, your attorney, Mr. Perez, has told me that you are reserving your right to appeal. That means that my decision which I just issued moments ago is not final. However, it will become final if you do not file your Notice of Appeal with the Board of Immigration Appeals on or before July 1st, 2022. Do you understand? Do you understand, sir, that you must file the Notice of Appeal no later than July 1st, 2022, with the Board of Immigration Appeals or my decision will be final?

MR. AGUILAR GARCIA TO JUDGE

Yes. I do have a question. Well, I do have a question now. I would like to know why is it that my case wasn't close. I seen on the news that President Biden has been closing cases for those who have children who were born here in the United States.

JUDGE TO MR. AGUILAR GARCIA

Sir, you can speak with your attorney about any questions you have. I'm only, I'm not part of the Department of Homeland Security so I cannot comment on that

question but speak with your attorney. No, sir. Sir if you have any questions speak with your attorney.

MR. AGUILAR GARCIA TO JUDGE

Well, I had spoken to my attorney. Well, I talked to my attorney about it, and he told me it was denied. But isn't the Government attorney there?

JUDGE TO MR. AGUILAR GARCIA

Yes, the Government attorney is here, sir, but we are completing your hearing at this time. If you have any other questions, please speak with your attorney, Mr. Perez.

JUDGE TO MR. FEWT

Mr. Fewt, is this final for the Government or do you reserve appeal?

MR. FEWT TO JUDGE

It's final, Your Honor.

JUDGE TO MR. FEWT

All right, thank you.

JUDGE TO COUNSEL

All right, Mr. Perez, Mr. Fewt, I will issue an order. We will send them; we'll mail them to both parties. Is there anything else before we conclude?

MR. FEWT TO JUDGE

No, Your Honor, thank you.

JUDGE TO MR. FEWT

Thank you.

JUDGE TO MR. PEREZ

Mr. Perez?

MR. PEREZ TO JUDGE

No, Your Honor, thank you.

JUDGE TO MR. PEREZ

Thank you.

JUDGE FOR THE RECORD

And we are adjourned. Thank you very much.

HEARING CLOSED