UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

CASE NO.: 25-CR-492 (AJB)
**FILED UNDER SEAL**

MARVIN AGUILAR GARCIA

**DEFENDANT'S RESPONSE TO GOVERNMENT'S THIRD MOTION *IN LIMINE* REGARDING IMPEACHMENT MATERIAL**

DATED: February 10, 2026
Syracuse, New York

ERIC SCHILLINGER
Federal Public Defender

By: /s/Gabrielle DiBella
Gabrielle DiBella
Assistant Federal Public Defender
Bar Roll No. 700576
Office of the Federal Public Defender
4 Clinton Square, 3rd Floor
Syracuse, New York 13202
(315) 701-0080

## I. Background

Marvin Aguilar Garcia has been indicted on one count of assaulting a federal officer and causing bodily injury, specifically for throwing a book at BPA Baize on December 15, 2025. There are no witnesses to the alleged assault. No witness can conclusively say that the book was the object thrown. No witness can conclusively identify any other object thrown. On February 7, 2026, the Government disclosed impeachment material to the defendant including the following:

a. That BPA Baize joined a secret Border Patrol Facebook group called "I'm 10-15" in approximately 2018 and remained in the group until it was shut down in 2019.[1]
b. BPA Baize admits that while he was a member of the group, he re-shared posts or stories into that group on 12 or fewer occasions where he also added commentary of his own. These posts, stories, and comments were related to law enforcement use of force policies and what BPA Baize believed to be appropriate force. During this time, BPA Baize was stationed in the less-lethal training office in El Paso, Texas.
c. On approximately 20 other occasions, BPA Baize re-shared posts or memes into the Facebook group without adding additional commentary. BPA Baize describes some of these posts as depicting a South Park character as a Border Patrol Agent in front of a border wall, with a caption saying something like "get back," "not today," or other similar language.
d. BPA Baize admits he "may have" re-shared a post or meme that referred to migrants as "tonks," "wets," or some other derogatory term.
e. On December 29, 2023, BPA Baize shared a picture of a t-shirt that said "Wanna make everything electric? Start with the border wall."
f. On January 25, 2026, BPA Baize re-shared a post about the killing of Alex Pretti occurring in Minneapolis, Minnesota on January 24, 2026. BPA Baize exchanged comments with [redacted] on that post, wherein BPA Baize said that Alex Pretti had "fought" and "violently resisted" law enforcement while carrying a firearm, and that Pretty's own actions had caused his death.
g. The same day he re-shared a post about the killing of Alex Pretti, he also shared a post that stated "If ICE is so untrained and out of control, how come Minneapolis is the only city in which we are seeing these tragedies? Maybe its because the leadership of Minnesota is encouraging miscreants to break the law, terrorize the city, and impede law enforcement."

---

[1] "I'm 10-15" had approximately 9,500 members and gained media attention due to the offensive and violent nature of the posts made by members. Posts included jokes about sexual violence and assault, death of migrants, and racist and misogynistic slurs. Two notable posts related to the death of migrants involved an internal video posted by a BPA of a migrant falling off a cliff to their death, and a deceased father with his deceased son floating facedown in a body of water. A Congressional committee investigated CBP's response to this activity, and concluded that the disciplinary process for those involved was inconsistent, that the inconsistent penalties hampered the agency's ability to hold agents accountable, and that CBP provided insufficient social media training to agents. *See generally, Border Patrol Agents in Secret Facebook Group Faced Few Consequences for Misconduct,* Staff Report, Committee on Oversight and Reform (Oct. 2021), *available at* cor.cbp.facebook.group.report.-.october.2021[95].pdf.

h. The week prior, BPA Baize re-shared a video with a caption saying "Calling enforcement slavery doesn't make it true. It just shows you don't understand either one. #ice #immigration #truth"

i. Also in late January 2026, BPA Baize re-shared a video of a man drinking out of a mug that appears to say "SORRY NO HABLO" with a text overlay which reads "I remember when you had to flash your vaccine card to eat, travel, or go to the gym. So I couldn't care less that ICE is asking for proof of citizenship. Call me heartless. I don't care."

On February 10, 2026 the Government disclosed to the defendant that both BPA Bastedo and SBPA Daniels were also members of the "I'm 10-15" Facebook group. According to BPA Bastedo, he joined the group in approximately 2016, he did not post or participate, and he left in September 2018 because he felt the content was becoming inappropriate. According to SBPA Daniels, he does not recall whether he posted or participated in the group. SBPA Daniels also disclosed that he observed a post in that Facebook group that made derogatory references about Congresswoman Alexandria Ocasio-Cortez. SBPA Daniels disclosed that he commented on the post advocating for it to be taken down and for the posters and participants to be more professional. SBPA Daniels disclosed that he then left the secret Facebook group.

## II. Analysis

### a. BPA Baize's Involvement with "I'm 10-15" is admissible

The Government argues that BPA Baize's membership in the "I'm 10-15" Facebook group is inadmissible because its probative value would be substantially outweighed by the danger of unfair prejudice. The fact that the Government believes that BPA Baize or the Government would be prejudiced by the introduction of this evidence is exactly why this evidence *is* admissible. Membership in a group of individuals posting jokes about the deaths of migrants reveals the deep-seated and firmly established bias that BPA Baize has against immigrants. BPA Baize sought out this secret Facebook group to join. He got a flavor of what type of content the group was posting and what type of views the group embraced. He not only remained a member, but he was an *active* member posting in the group. He participated in the group by sharing posts, and sometimes adding his own commentary to the posts. The fact that he is still able to recall specifics about what he posted nearly 7 or 8 years ago is a telling sign that he still agrees with the content that he was posting. Remembering specifics about a post shared that long ago is a strong indication that the post espoused a deeply held belief.

While BPA Baize claims he can't recall if he also shared a post referring to migrants as "tonks," "wets," or some other derogatory term,[2] the fact that he can't rule it out is a strong indicator that he likely did share this post, or otherwise used those terms. Someone who has

---

[2] A "tonk" is a derogatory term to reference a migrant, believed to originate from the sound made by a utility flashlight or police baton hitting a migrant's head. *See Emails Show Border Patrol's Widespread Use of Anti-Immigrant Slur*, HUFFPOST (Feb. 2024) *available at* https://www.huffpost.com/entry/border-patrol-agents-tonk-usage-emails-messages-released_n_65cbcfffe4b065628a611059. A "wet" appears to be shorthand for "wetback" which is a derogatory term for immigrants typically from Mexico who entered Texas by crossing the Rio Grande, referring to getting their back wet in the process.

never used those terms would be able to definitively say that they were not involved in posting content with that language. BPA Baize cannot definitively say that he didn't.

Any prejudice to BPA Baize or the Government by the introduction of evidence of his membership in this group is demonstrative of the deep-rooted prejudice BPA Baize has against immigrants. BPA Baize's membership in the group, and continued membership in the face of incredibly offensive and violent anti-immigrant posts, shows a well-founded bias against immigrants, and is admissible. The Government argues that BPA Baize's reposts and commentary, descriptions of which we only have from BPA Baize himself, don't demonstrate racial animus and instead involve "pro-USBP and pro-immigration-enforcement stances, rather than negative stances towards migrants." Calling an immigrant a "wet" or a "tonk" is not a pro-law enforcement stance. The use of derogatory slurs like "tonk" and "wet" can only be interpreted as espousing and embracing an anti-immigrant stance. BPA Baize has crossed a line from being pro-law-enforcement to being firmly anti-immigrant. And he continues to cross this line even now.

The Government also argues that any argument that Baize was a member of the group would require explanation about the background and significant of the group. Specifically, the Government claims that this would involve testimony about the inflammatory nature of posts that BPA Baize himself did not make, and would "seriously risk the jury ascribing the animus of the worst of the group's members to all of its members." BPA Baize sought out and joined a secret Facebook group which involved the sharing of horribly offensive and derogatory photos and posts. He remained in this group despite the sharing of these offensive and derogatory posts, and one could argue he remained in this group *because* of the sharing of these posts. BPA Baize affirmatively chose to remain a member of this group, when he had the option at any time to leave. His decision to stay in the group is a direct reflection of his beliefs and implicit approval of the offensive posts. At any time, BPA Baize could have decided that the group crossed a line. By staying in the group, his membership is an admission that he either enjoyed the offensive content, agreed with the offensive content, or both.

Criminal defendants have a constitutional right under the Sixth Amendment to cross-examine Government witnesses and to reveal "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand."[3] As is noted in the panoply of pretrial filings, the sole issue in this case is credibility. BPA Baize alleges that Marvin assaulted him and caused bodily injury to him by throwing a book. No one witnessed the alleged assault, and no one can conclusively state that the book was thrown at BPA Baize. The entire trial depends on whether the jury believes BPA Baize. BPA Baize works for an agency that necessarily entails interacting with immigrants. BPA Baize spearheaded an operation to arrest Marvin on an order of removal despite a pending appeal.[4] BPA Baize's deeply held beliefs about immigrants undoubtedly played a role in his investigation into Marvin and his arrest of Marvin

[3] *Davis v. Alaska*, 415 U.S. 308, 316 (1974).

[4] Notably, the Government admitted at the pretrial conference that some of the agents knew about the pending appeal but may have incorrectly believed that the appeal didn't preclude Marvin's removal, or may have "mistakenly" believed the appeal had concluded. The fact that Border Patrol agents, who are law enforcement officers charged with enforcing the law, claim they didn't know the law prohibited the execution of the order of removal goes directly to credibility.

on December 15, 2026. When BPA Baize learned he had a black eye, his only conclusion was that Marvin must have thrown something at him, despite all evidence to the contrary. His deeply held bias and prejudice against immigrants were indisputably at play through all relevant events in this case. His continued membership and participation in the "I'm 10-15" group clearly indicates this bias and prejudice, which calls into question his credibility. Marvin has a constitutional right to cross-examine BPA Baize on this continued membership and participation, and the evidence related to his membership and participation is admissible.

**b. BPA Baize's 2023 and 2026 social media posts are also admissible**

Outside of his biased and racially motivated posts in the "I'm 10-15" Facebook group, BPA Baize continued to post other offensive content on his personal Facebook. He continues to embrace anti-immigrant views, seeking out content to reshare with others. Each post is admissible. The picture of a t-shirt that says "Wanna make everything electric? Start with the border wall." clearly indicates his feelings on immigrants, and his stance that, even if tongue in cheek, immigrants should be electrocuted for nothing more than attempting to enter the United States.

His sharing of a video with a text overlay reading "I remember when you had to flash your vaccine card to eat, travel, or go to the gym. So I couldn't care less that ICE is asking for proof of citizenship. Call me heartless. I don't care." also indicates his bias and prejudice towards immigrants. He equates having to show a COVID-19 vaccine card to be able to engage in certain events in public with the requirement to show one's papers and prove citizenship to avoid detention even if that detention is unlawful. Additionally, the individual portrayed in the video is holding a mug that is partially visible, reading "Sorry, no hablo." Defense counsel located the video that was shared by BPA Baize, and the full text of the mug reads "Sorry, no hablo fucktardo" translating to "sorry, I don't speak fucktard." [5] The "no hablo" language on the mug is an obvious reference to Spanish-speakers.

---

[5] Fucktardo appears to be a reference to "fucker" and "retard" with an "o" added at the end to simulate nouns in the Spanish language which commonly end in -o or -a.


I remember when you had to
flash your vaccine card to eat,
travel, or go to the gym.
So I couldn't care less that
ICE is asking for proof of
citizenship. Call me heartless.
I don't care. 💯

BPA Baize also reshared a video that bore the caption "Calling enforcement slavery doesn't make it true. It just shows you don't understand either one." Defense counsel located the video that BPA Baize shared. The video starts off by saying that "calling ICE Nazis isn't activism, it's what happens when visibility gets mistaken for tyranny" and noting that "under no administration did enforcement come with hugs and high fives." The re-sharing of this video shows BPA Baize's bias and prejudice against immigrants, by mocking the idea that enforcement of immigration laws could be done civilly or "come with hugs and high fives." Around this same time period, BPA Baize also shared a post indicating that individuals protesting ICE'S activities in Minnesota are "miscreants who are break[ing] the law, terroriz[ing] the city, and imped[ing] law enforcement." The bias and prejudice in this post are obvious. Characterizing all individuals who are lawfully observing the behavior and activity of both ICE and CBP in Minnesota as breaking the law, terrorizing the city, and impeding law enforcement, is an incredible statement in the face of video evidence to the contrary, showing these individuals merely observing or filming law enforcement. Theses posts go directly to his credibility.

BPA Baize continues to embrace the view that those individuals who are protesting ICE and CBP's activity in Minnesota are somehow violating the law. On January 25, 2026, he re-shared a post with his own comment that, "[i]f you want to protest, assemble in front of the lawmakers and air your grievance. DO NOT interfere with law enforcement operations, (YES THEY ARE LAWFUL). He goes on to engage in comments with [redacted], wherein he indicates that is unlawful to put a camera in an agent's face while they are conducting business and to put hands on an agent and forcibly resist them. He goes on to state that "[y]ou CAN NOT fight and violently resist law enforcement while carrying a firearm without running the risk of being killed." When [redacted] points out that Alex Pretti was not engaged in any of those actions, and that the penalty for those actions is not extrajudicial death, BPA Baize doubles down and says "[t]he 10sec clips that FB has selected for you to see probably does not show all of his actions, but when the full encounter is viewed from the very beginning, Alex Pretti did every one of the things I noted." He then blames Alex Pretti for his own death. In the face of all video evidence to the contrary, BPA Baize maintains that Alex Pretti was violent and forcibly resisting law enforcement. These comments go directly to his credibility as it relates to the events in this case. Presented with evidence to the contrary, BPA Baize refuses to accept that Alex Pretti was not, in fact, violent or resisting law enforcement. Despite the complete lack of evidence that Marvin threw a book, BPA Baize continues to assert that Marvin threw a book.

All of these posts, individually and together, show an unmistakable bias and prejudice so deeply intertwined with credibility that it cannot be ignored. BPA Baize has a history of espousing and sharing anti-immigrant views, which has continued for years, culminating in his justification of a public execution of an individual in Minnesota who was peacefully observing ICE and CBP. BPA Baize is so staunchly anti-immigrant that he continues to justify the killing of an individual who was doing nothing more than observing law enforcement and being present in a crowd of people filming law enforcement to hold them accountable for their treatment of immigrants. Despite the public backlash that the "I'm 10-15" group received for the continued posting of anti-immigrant content, BPA Baize has remained committed to posting anti-immigrant content, reflecting just how deeply rooted his bias and prejudice are, and indicating that he is not a credible witness in this case.

### c. BPA Bastedo and SBPA Daniels's membership in "I'm 10-15" is admissible

The fact that BPA Bastedo and SBPA Daniels left the "I'm 10-15" group because of the nature of the content being shared makes the fact that BPA Baize never left the group more significant. Their membership and departure from the group show that staying in the group was a deliberate choice made by BPA Baize. Their membership and departure from the group demonstrate that while some were disgusted by the content shared by the group, others, like BPA Baize, embraced it. Their membership and departure in the "I'm 10-15" group is admissible not because it involves their credibility, but because it strongly implicates BPA Baize's credibility. Their departure for generally the same reason, the nature of the content, indicate the group wasn't just espousing pro-law-enforcement or pro-immigration-enforcement views, but was instead crossing a line into anti-immigrant views. Their membership and departure make it all the more relevant that BPA Baize stayed. Their lack of participation in the group make it all the more relevant that BPA Baize was vocal in the group. Their ability to take a step back from anti-immigrant content makes it all the more relevant that BPA Baize remains committed to embracing and espousing these anti-immigrant views. There is no risk the jury will discount their testimony because of their temporary membership. But without this evidence, there is a risk the jury may miss the significant of BPA Baize's decision to stay in the group. For all of these reasons, evidence of their membership, departure, and lack of participation is admissible.

### d. A mini-trial about the "I'm 10-15" group is not necessary

The Government argues that evidence about membership in the "I'm 10-15" group would invite a mini-trial upon collateral issues. First and foremost, credibility is not a collateral issue- it is *the* issue. Evidence of membership in the "I'm 10-15" group is not only relevant to determining credibility, it's necessary to determine credibility. Allowing BPA Baize to testify about his version of events without allowing the jury to hear about his bias and prejudice against immigrants is to cut off a direct line of legitimate questioning directly related to his credibility in violation of Mr. Aguilar Garcia's Sixth Amendment rights. Secondly, the fact that the jury would need background information about the "I'm 10-15" group to understand the significance of membership in it does not necessarily mean there would be a trial within a trial. It is indisputable the group gained public attention for the offensive and violent posts contained therein. It is indisputable that the group was not just a pro-law-enforcement group. It is easily explained to the jury that the group espoused anti-immigrant views. Any concern of a trial within a trial is misplaced, and Mr. Aguilar Garcia's Sixth Amendment rights trump any minimal concern of a mini-trial.

## III. Conclusion

For the foregoing reasons, all of the evidence disclosed by the Government related to BPA Baize's social media activity and membership in "I'm 10-15", as well as the temporary membership and subsequent departure of BPA Bastedo and SBPA Daniels, is admissible at trial.

DATED: February 10, 2026
Syracuse, New York

ERIC SCHILLINGER
Federal Public Defender

By: */s/Gabrielle DiBella*

Gabrielle DiBella
Assistant Federal Public Defender
Bar Roll No. 700576
Office of the Federal Public Defender
4 Clinton Square, 3rd Floor
Syracuse, New York 13202
(315) 701-0080