OFFICE OF THE FEDERAL PUBLIC DEFENDER
FOR THE NORTHERN DISTRICT OF NEW YORK

Syracuse Office

4 Clinton Square
3RD FLOOR
SYRACUSE, NY 13202
(315) 701-0080
(315) 701-0081 FAX

Albany Office

54 State St.
3RD FLOOR
ALBANY, NY 12207
(518) 436-1850
(518) 436-1780 FAX

February 12, 2026

Hon. Anthony Brindisi
United States District Judge
10 Broad St.
Utica, NY 13501

**RE: United States v. Marvin Aguilar Garcia**
**Case No. 25-CR-492 (AJB)**

Dear Judge Brindisi:

I am writing to respond to an email dated February 11, 2026, from AUSA Gillis which provided additional information about two ongoing issues for trial. The Government's email is attached to this letter as Exhibit A.

## I. Due Process for Bond Revocations

At the final pretrial conference, the Government argued that there is no process due before an arrest in the context of a bond revocation in an immigration case. The Government asserts that a district court within the Second Circuit has held that process is due after arrest, but not before. For this proposition, the Government cites to *O.F.C. v. Almodovar*, a Southern District of New York case.[1] The Court in Almodovar held that the petitioner was not entitled to a pre-arrest hearing, but that *some process was still required statutorily prior to the arrest*. This process comes in the form of "some level of individualized determination." This pre-arrest process is exactly what is missing from the arrest of Mr. Aguilar Garcia. *No* individualized determination was made prior to his arrest. Instead, according to the Government, some of the agents knew that he had an appeal pending and believed they could still arrest him on the order of removal, and some very incredibly believed the appeal had concluded. Prior to his arrest, no individualized determination took place. The Government has attempted to justify the arrest by saying that there were circumstances that justified a bond revocation, but the process required to happen prior to arrest did not happen in this case. Defense counsel maintains the arrest was unlawful, and the

[1] 2026 WL 74262 (S.D.N.Y. Jan. 9, 2026).

circumstances behind the traffic stop and arrest are relevant, probative, and relate directly to credibility.

## II. Whether the return of a no true bill can be unsealed or publicly disclosed

The Government argues that the "no true bill" is a "matter occurring before the grand jury" as outlined in Fed. R. Crim. P. 6(e)(2)(B), and is "therefore entitled to the secrecy and protection outlined in that Rule." For a multitude of reasons, the Government is wrong.

### a. A no true bill is <u>not</u> covered by Federal Rule of Criminal Procedure 6(e)

The Government believes that the return of a no true bill is a "matter occurring before the grand jury." Similar to an indictment, the return of a no true bill is the *product* of a matter occurring before the Grand Jury, not a component of the Grand Jury proceedings themselves. Fed. R. Crim. P. 6(e) concerns the disclosure of the nuts and bolts of the proceeding, not the outcome of the proceeding. It is illogical to believe that one outcome (indictment) is publicly available, and the other (no true bill) is forever kept secret.

In support of their argument, the Government cites to an unpublished case from the Northern District of Georgia, *United States v. Jones*.[2] The Government cites to *Jones* for the proposition that Rule 6 does not require the Government to disclose a no true bill to a Court or any party. The Court in *Jones*, in coming to that conclusion, reasoned that Rule 6(f) requires that the grand jury foreperson promptly and in writing report the lack of concurrence to the magistrate judge **only** if a complaint or information is pending against the defendant and 12 jurors do not concur in the indictment.[3] That reasoning is flawed. Rule 6(f) does require prompt disclosure of a no true bill when a complaint or information is pending. This provision was added to ensure that a defendant in those circumstances can be released from detention or supervision. The *Jones* court focused on the wrong word to emphasize. The court should have focused on the word "promptly." The use of the word "prompt" in 6(f) implies that a no true bill must be disclosed even when there is no complaint or information pending, but that it just doesn't have to be done *promptly*.

Because the return of a no true bill is the product of a Grand Jury proceeding, just like a publicly-filed indictment is, the fact of it is not covered by Rule 6, and it is not entitled to any secrecy or protection outlined in that Rule. Because the return of the no true bill finds no protection under Rule 6, this Court can publicly disclose the fact of it.

### b. Even if a no true bill were covered by Rule 6, the fact of it can still be unsealed

As noted above, the return of a no true bill is not covered by Rule 6, and therefore not entitled to secrecy or protection. However, even if this Court determines that it is covered by Rule 6, there are multiple reasons why the return of the no true bill can (and should) be unsealed and made public.

---

[2] No. 1:05-CR-617-WSD, 2007 WL 2071267 at *6 (N.D. Ga. July 19, 2007)(unpublished).
[3] *Id.* (emphasis added).

### i. Public policy and constitutional protections demand that the no true bill be made public

Since the 17th century, Grand Jury proceedings have been closed to the public, and records of such proceedings have been hidden from the public eye.[4] The earliest justification for secrecy of these proceedings was to prevent suspected criminals from absconding once learning they were under investigation and may be charged criminally.[5] However, the Grand Jury doesn't function solely to further a governmental interest in law enforcement, but also acts as a "protector of citizens against arbitrary and oppressive governmental action."[6] Disclosure is appropriate when continuing secrecy would be inconsistent with the Grand Jury's function to protect the citizens.

Disclosing the return of a no true bill on the proposed superseding indictment protects citizens because it informs the public about the failure of the Government to sufficiently prove their case to the Grand Jury. Because the Government failed to sufficiently prove their case to the Grand Jury, the return of the no true bill is exculpatory *Brady* material. The Government's obligations under *Brady v. Maryland* make it clear that the Government has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment.[7] This obligation includes both exculpatory material and impeachment material.[8] The return of a no true bill is both. The Grand Jury's refusal to indict Marvin on the broader "object" theory invalidated the original indictment which alleged the more specific book theory. This exculpates Marvin, as a group of ordinary citizens who heard evidence only from the Government, favorable to the Government, and not subject to cross-examination, *still* did not believe that Marvin assaulted BPA Baize. It is also impeachment material because it could be used to impeach [redacted]. [redacted] The Government cannot preclude the use of exculpatory evidence and impeachment material by relying on a secrecy rule that doesn't even contemplate keeping the outcomes of the proceedings secret.

---

[4] *See* Mark Kadish, *Behind the Locked Door of an American Grand Jury: Its History, Its Secrecy, and Its Process*, 24 Fla. St. U. L. Rev. 1, 13 (1996) (providing a history of grand jury secrecy from pre-colonial England all the way through early American jurisprudence).

[5] *Id.* at 15 (citing John Sommers, The Security of Inglish-Mens Lives, or the Trust, Power, and Duty of the Grand Jurys of England 46-54 (London, Benjamin Alsop 1682)).

[6] *United States v. Calandra*, 414 U.S. 338, 343 (1974); *see also Butterworth v. Smith*, 494 U.S. 624, 629 (1990) (highlighting the "equally important function" of "safeguard[ing] citizens against an overreaching [State] and unfounded accusations").

[7] 373 U.S. 83, 87 (1963)

[8] *Giglio v. United States,* 405 U.S. 150 (1972).

### ii. The Court has express authority to disclose the return of the no true bill

Federal Rule of Criminal Procedure 6(e)(3)(E)(i) permits a court to authorize disclosure of a Grand Jury matter "preliminarily to or in connection with a judicial proceeding." Some courts have found that a Grand Jury investigation is either itself a judicial proceeding, or is preliminary to a judicial proceeding- namely the criminal trial that would follow the indictment.[9] The trial in this matter, currently scheduled to begin on February 17, 2026, is clearly the judicial proceeding contemplated by this subsection, thus allowing this Court to disclose publicly the return of the no true bill.

### iii. The Court has inherent authority to disclose the return of the no true bill

This Court also has the inherent authority to disclose Grand Jury matters even in circumstances not specifically outlined in Rule 6. The Supreme Court has held that where a statute "explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."[10] Rule 6(e) provides that a matter occurring before a Grand Jury must not be disclosed unless the Rules provide otherwise. This explicitly grants authority to courts to order disclosure in particular, enumerated circumstances. Nevertheless, some courts have held that the list of court-authorized exceptions in 6(e) is *not* exclusive, and that courts themselves have an inherent authority to permit disclosure of Grand Jury information in circumstances not expressly provided for in the Rule.[11] Courts that have allowed for this idea of inherent authority have pointed to multiple justifications for recognizing this authority to breach Grand Jury secrecy.[12]

Courts that have recognized that there exists inherent authority to release Grand Jury materials have generally recognized that the exercise of such authority should be reserved for exceptional circumstances.[13] Factors courts have considered in determining whether to exercise

---

[9] *See, e.g.*, *In re* Grand Jury, 490 F.3d 978, 986 (D.C. Cir. 2007) (remarking that it "makes sense" that a grand jury investigation is a judicial proceeding "given that the district court itself convenes and supervises the grand jury proceedings," and it also "may be considered 'preliminary' to a judicial proceeding—namely, preliminary to a possible criminal trial."); *United States v. Mayes*, 670 F.2d 126, 129 (9th Cir. 1982) ("[I]t seems clear that grand jury proceedings are at least preliminary to a judicial proceeding."); *United States v. Rodriguez*, 380 F. Supp. 2d 1041, 1058 (D.N.D. 2005).

[10] *Andrus v. Glover Const. Co.*, 446 U.S. 608, 616-17 (1980).

[11] *Carlson v. United States*, 837 F.3d 753, 766-67 (7th Cir. 2016); *In re* Craig, 131 F.3d 99, 102 (2d Cir. 1997) (citing *In re* Biaggi, 478 F.2d 489, 494 (2d Cir. 1973)); *In re* Nichter, 253 F. Supp. 3d 160, 165 (D.D.C. 2017); *see also In re* Special Grand Jury 89-2, 450 F.3d 1159, 1178 (10th Cir. 2006) (expressing that relief "may be proper under the court's inherent authority" but declining to rule on the issue).

[12] *See, e.g., Carlson*, 837 F.3d at 762 (recognizing that courts have always had supervisory authority over the grand juries they impanel, which includes the discretion to determine when grand jury materials should be released); *id.* at 763; (the Federal Rules of Criminal Procedure do not eliminate a court's authority as a general matter, meaning that courts may still take certain actions consistent with, though not explicitly authored by, the Rules); *In re* Craig, 131 F.3d 99 at 102 (noting that "the origins of Rule 6(e)" indicate that it "reflects rather than creates the relationship between federal courts and grand juries").

[13] *See Craig*, 131 F.3d at 102 ("Rule 6(e) governs almost all requests for the release of grand jury records," but "there are certain 'special circumstances' in which release of grand jury records is appropriate even outside of the

this inherent authority include, among others, the identity of the party seeking disclosure, why disclosure is being sought, what specific information is being sought for disclosure, and the additional need for maintaining secrecy in the particular case in question. [14] Here, the party seeking disclosure is the defendant himself. The person named in the underlying indictment, and who the Government unsuccessfully attempted to name in a superseding indictment. Disclosure of the return of a no true bill is being sought because it is exculpatory evidence and impeachment material, both of which are critical to ensuring a fair trial. There is no need for maintaining secrecy in this case. Marvin will have a public trial starting on February 17, 2026. Marvin enjoys constitutional rights associated with this trial, including the right to present a defense. Presenting evidence that a Grand Jury returned a no true bill on the exact same facts the Government seeks to present at the trial is a defense that Marvin is entitled to present. This is so because the no true bill was a complete rejection of the both the superseding and underlying indictments, and is exculpatory evidence. Marvin has already been indicted, consents to disclosure of the return of the no true bill, and such disclosure creates no issue of jeopardizing any other investigation. This Court should use its inherent authority to disclose the return of the no true bill to ensure that Marvin receives a fair trial and is able to exercise his constitutional right to present a defense.

### iv. Pre-trial disclosure of the no true bill would not influence jurors

The Government asks this Court to delay unsealing of the no true bill until after trial. The Government argues that the no true bill may attract significant media attention which runs the risk of influencing prospective jurors in advance of trial. However, the Government's request to keep exculpatory evidence and impeachment material secret and hidden during the most important proceeding in this matter, will be what actually influences jurors. Jurors will know that Marvin was indicted. This Court will read the indictment to prospective jurors. To hide that a Grand Jury rejected a superseding indictment on the exact same facts presented at the trial would influence jurors and cause them to believe that the Grand Jury heard this testimony before and believed it, contrary to the truth.

### v. Evidence of the no true bill should be admitted at trial

The Government has filed a motion *in limine* seeking to preclude the defendant from referencing the return of the no true bill at trial. The Court has reserved decision. Given that the Government intends to proceed at trial on the exact same legal theory that the Grand Jury rejected, if the trial jury is not told about the return of the no true bill, they will believe that the Grand Jury accepted the witness's testimony and returned an indictment. This gives the Government an unfair advantage while depriving Marvin of any opportunity to rebut that assumption. This will also deprive Marvin of his right to a fair trial and his constitutional right to present a defense.

---

boundaries of the rule."); *Carlson*, 837 F.3d at 766 (acknowledging that supervisory authority may only be employed "as needed to ensure the proper functioning of a grand jury").

[14] *Craig*, 131 F.3d at 106.

Because the return of a no true bill is not covered by Federal Rule of Criminal Procedure 6(e), it is not afforded the secrecy referenced in that section. Moreover, even if it were covered by Rule 6(e), this Court has both express and inherent authority to disclose the fact of the no true bill. Not only that, the return of the no true bill is both exculpatory evidence and impeachment material which is necessary to publicly disclose to ensure that Marvin receives a fair trial.

Respectfully submitted,

Gabrielle DiBella
Asst. Federal Public Defender