

**Michael J. Grygiel**
**Heather E. Murray**
*First Amendment Clinic*
Myron Taylor Hall
Ithaca, NY 14853-4901
Phone: (607) 255-8518
Email: mgrygiel@foleyhoag.com
  hem58@cornell.edu

**July 29, 2026**

*VIA CM/ECF*

Hon. Anthony J. Brindisi
United States District Court
Northern District of New York
Alexander Pirnie Federal Bldg. and U.S. Courthouse
10 Broad Street
Utica, New York 13501

*Re: USA v. Aguilar-Garcia, Dkt. No. 5:25-cr-00492*

Dear Judge Brindisi:

## I.   Introduction

We represent Advance Publications, Inc., publisher of community newspaper *The Post-Standard* and its website *Syracuse.com*,[1] in connection with the above-referenced proceeding. Any reasons behind the United States Attorney's request to dismiss this case against Marvin Aguilar-Garcia set forth in the Letter Accompanying Dismissal Order (the "Letter" or "LADO"), and the Court's decision to do so days before a jury was to be selected, are matters of legitimate public concern. We understand that U.S. Border Patrol agents arrested Aguilar-Garcia for allegedly assaulting a federal agent as part of a sweeping federal immigration enforcement crackdown that has spurred protests in recent months around the State and the country. While *Syracuse.com* has reported what it could glean from the public docket about the circumstances surrounding Aguilar-Garcia's arrest and the alleged lack of evidence to support the claim that he assaulted a federal agent with an automobile owner's manual, the reasons behind the ultimate resolution of the case are shrouded from public view in sealed docket entries. *See* Michelle

---

[1]  For ease of reference, the print and website editions of the newspaper will hereinafter be referred to in the singular as "*Syracuse.com*."

Breidenbach, Haley Moreland & Isabel Melendez-Rivera, *Assault with an owner's manual: How a botched immigration bust in NY reveals agents' tactics*, SYRACUSE.COM (May 12, 2026), [https://www.syracuse.com/news/2026/05/ assault-with-an-owners-manual-how-a-botched-immigration-bust-in-ny-reveals-agents-tactics.html](https://www.syracuse.com/news/2026/05/assault-with-an-owners-manual-how-a-botched-immigration-bust-in-ny-reveals-agents-tactics.html).

That critical judicial documents filed by federal prosecutors are sealed is antithetical to virtually everything that the U.S. Supreme Court and the Second Circuit Court of Appeals have ever said about the values of open judicial proceedings and the correlative rights of public access to court records. If access to the government's Letter submitted to influence the Court's decision-making in the context of dismissing the case—a core exercise of judicial power—continues to be denied, together with the other sealing and docketing deficiencies detailed below, the fundamental value of public oversight of the judicial process will be compromised. "Transparency is pivotal to public perception of the judiciary's legitimacy and independence," and thus "[a]ny step that withdraws an element of the judicial process from public view . . . requires rigorous justification." *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (quotation omitted). "Because the Constitution grants the judiciary 'neither force nor will, but merely judgment,' courts must impede scrutiny of the exercise of that judgment only in the rarest of circumstances." *Id.* (quoting THE FEDERALIST No. 78 (Alexander Hamilton)).

The press's ability to keep the public informed is premised in large part on open access to the court system, and on its ability to examine and report on judicial documents. The sealing and docketing practices challenged here have directly impeded *Syracuse.com* from carrying out its important responsibility of reporting fully, accurately, and contemporaneously on a newsworthy prosecution of paramount public concern.[2] The public deserves to understand why the U.S.

---

[2] A recent *New York Times* investigation suggests that prosecutors' withdrawal of the assault charge against Aguilar-Garcia in this case is part of an "abysmal" pattern. Of the more than 400 cases involving the Trump administration filing assault charges against people caught in its immigration crackdown that the investigation identified as being "resolved so far, nearly half have unraveled: Juries acquitted defendants, judges threw out charges, or prosecutors withdrew them." Mike McIntire et al., *They Were Charged With Assaulting Ice Agents: The Cases Are*

Attorney for this District dropped the assault charge in this case involving the arrest of a vulnerable defendant. As the U.S. Supreme Court has observed, "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 572 (1980).

As discussed more fully below, the legal standards mandating public access to judicial documents and requiring the Court to maintain a complete and accurate public docket should be assiduously applied here. The First Amendment and common law rights of the press to gather news, the public to receive information, and the public to access matters transpiring in our court system dictate that the Court should (1) unseal the government's Letter requesting dismissal of the case attached in Dkt. Nos. 81 & 83), (2) unseal the additional pre-trial motion and related documents and Court Order sealed or redacted in Dkt. Nos. 31, 48, 53, 62, 64, 70-72, 77 and 80, and (3) ensure that missing docket entries 22, 41, and 60 are posted on the public docket.

## II.    *Syracuse.com* Has Standing to Intervene to Protect the Public's Right of Access to the Sealed Court Records and Missing Docket Entries

Courts routinely find that newspapers have standing to challenge sealing orders and deficient docketing practices, which in this case have infringed on *Syracuse.com*'s First Amendment right to receive information and to gather news.[3] As the Second Circuit has emphasized, "[b]ecause vindication of the right of public access requires some meaningful opportunity for protest by persons other than the initial litigants . . . a motion to intervene to assert the public's First Amendment right of access to criminal proceedings is proper." *United States v. Aref,* 533 F.3d at 81

---

*Crumbling,* N.Y. TIMES (Jul. 18, 2026), https://www.nytimes.com/2026/07/18/us/ ice-assaults-protesters.html.

[3] Courts have consistently found that the press has standing to object to a denial of access to court records based on one or both of the following First Amendment rights: (1) the right of the press and public to *receive information* from trial participants; and (2) the press's independent right to *gather news* for dissemination to the public. *See, e.g., In re Dow Jones & Co.,* 842 F.2d 603, 608 (2d Cir. 1988), *cert. denied,* 488 U.S. 946 (1988).

(quotations and citation omitted). Accordingly, under the law of this Circuit, news organizations are routinely permitted to intervene — either as a matter of right or permissively — and be heard before they can be deprived of their rights of access to judicial records. *See, e.g., id*. (intervention motions "are common in [the Second] Circuit to assert the public's First Amendment right of access to criminal proceedings"); *United States v. Graham*, 257 F.3d 143, 149-51 (2d Cir. 2001); *SEC v. TheStreet.com*, 273 F.3d 222, 227 n.4 (2d Cir. 2001); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 164 F.R.D. 346, 351 (S.D.N.Y. 1996) (granting intervention as of right to newspaper seeking access to documents in judicial proceeding); *Savitt v. Vacco*, 95-CV-1842 (RSP/DRH), 1996 U.S. Dist. LEXIS 16875, *25 (N.D.N.Y. Nov. 8, 1996) (Pooler, J.) ("The Second Circuit Court of Appeals and its district courts consistently have held that news agencies have standing to challenge protective orders in cases of public interest."); *see also E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998) (collecting cases and stating that "despite the lack of a clear fit with the literal terms of Rule 24(b), every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders").

*Syracuse.com* publishes community news to readers in the City of Syracuse and throughout the greater Onondaga County vicinity, and has already devoted significant coverage to this case involving a dairy farmer who resided in the North Country prior to his arrest. On behalf of the public it serves, *Syracuse.com* is uniquely situated to protect the public's First Amendment and common law rights of access by challenging the sealing and docketing deficiencies in this case. *Diversified Group, Inc. v. Daugerdas*, 217 F.R.D. 152, 158 (S.D.N.Y. 2003) (media intervenor "has demonstrated a legitimate interest in disclosure of the documents at issue — *i.e.,* to provide readers with a complete story… and [its] interest is not represented by the other parties"). Formal recognition of the newspaper's intervenor status should be granted for that limited purpose. *Kelly v. City of New York*, 2003 U.S. Dist. LEXIS 2553, *6 (S.D.N.Y. Feb. 24, 2003) (newspaper intervention granted so that it may "articulate the public interest in access to the records at issue").

**III.    The Common Law and First Amendment Rights of Public Access Require Disclosure of the Sealed Court Records**

It is conclusively established under the common law that the public has a presumptive right of access, which "predate[s] the Constitution," to inspect and

copy judicial records. *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). The presumption of access "serves numerous salutary functions," *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 161 (3d Cir. 1993), and is "based on the need for federal courts, although independent – indeed, particularly because they are independent – to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*").  It provides the public "with a more complete understanding of the judicial system and a better perception of its fairness." *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988). Application of the common law right of access requires a determination of (1) whether a court record qualifies as a "judicial document," which is "relevant to the performance of the judicial function and useful in the judicial process" (*Amodeo I*, 44 F.3d at 145); (2) the weight given to the presumption of access, governed by "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts" (*Amodeo II*, 71 F.3d at 1049); and (3) the countervailing factors to be balanced against the presumption of access (*id.* at 1050). *See Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 142-43 (2d Cir. 2016).

In addition to the common law right of access, the U.S. Supreme Court and the Second Circuit recognize a First Amendment right of public access to court records in criminal proceedings. *In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987). As the Supreme Court has emphasized, the Constitution requires both open courts and open court records to ensure the "appearance of fairness [that is] so essential to public confidence in the system." *Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 508 (1984) (*Press Enterprise I*"). Press access to judicial proceedings and records keeps the public informed and helps instill public confidence in both the process and the results of criminal proceedings. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559-60 (1976). Under the First Amendment, a court record is presumptively subject to public access if (1) "the place and process have historically been open to the press and general public" (the "experience" prong) and (2) "public access plays a significant positive role in the functioning of the particular process in question" (the "logic" prong). *Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 8 (1986) (*Press-Enterprise II*).

The First Amendment access right imposes a heavy burden on those who seek to limit public access to justify any restriction. *Globe Newspaper Co. v. Superior*

*Ct.*, 457 U.S. 596, 606 (1982) ("the State's justification in denying access must be a weighty one[]"); *United States v. Cojab*, 996 F.2d 1404, 1405 (2d Cir. 1993) (the power to deny public access to court proceedings "is one to be very seldom exercised, and even then only with the greatest caution, under urgent circumstances, and for very clear and apparent reasons"). In particular, the party opposing access must demonstrate that:

1. There is a substantial probability of prejudice to a compelling interest if the right is not limited. *Press-Enterprise II*, 478 U.S. at 13-14; *Press-Enterprise I*, 464 U.S. at 510; *Richmond Newspapers*, 448 U.S. at 580-81.

2. There is no alternative to a limitation of the access right that will adequately protect the asserted interest. *Press-Enterprise II*, 478 U.S. at 14.

3. Restricting access will effectively protect the asserted interest. *Id.*

4. Any restriction on access is narrowly tailored. *Press-Enterprise II*, 478 U.S. at 13-14; *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006).

As a threshold—but fundamental—point, when the government "attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest[.]" *Globe Newspaper Co.*, 457 U.S. at 606-07; *ABC, Inc. v. Stewart*, 360 F.3d 90, 98-99 (2d Cir. 2004). This showing can only be made through specific factual findings made on the record; "broad and general findings by the trial court . . . are not sufficient to justify closure." *Lugosch*, 435 F.3d at 120 (internal quotations and citation omitted). It is not a gratuitous prescription to be disregarded or minimized at the option or convenience of a reviewing court, but a constitutional mandate intended to safeguard the public's interest in access to criminal proceedings. *United States v. Antar*, 38 F.3d 1348, 1362 (3d Cir. 1994) (the requirement of specific findings is "crucial in order to protect against erroneous restrictions upon the right of access") (footnote omitted). Here, no specific factual findings have been made on the record justifying the sealing of the government's Letter. Rather, the sealing was allowed by an Order (Dkt. No. 82) that, in turn, referred to a previous Order (Dkt. No. 23) that sought to avoid disclosure of "certain grand jury matters." This conclusory invocation of Fed. R. Crim. P. 6(e) to justify the wholesale sealing of the

Government's subsequent Letter fails to satisfy its First Amendment burden. And, to the extent the LADO includes information unrelated to grand jury matters, public access to that information is required pursuant to the constitutional narrow tailoring requirement. *In re New York Times Co.*, 828 F.2d at 116 (redaction, "as opposed to . . . wholesale sealing," is required).

The public interest in transparency is at its apex in this case, which involves serious concerns regarding the basis for the arrest of Aguilar-Garcia and the government's reasons for sudden dismissal of the proceeding. The Letter will presumably illuminate *why* the prosecution sought to dismiss this case five days before trial was set to commence. To the extent prosecutorial overreach or misconduct occurred, courts uniformly reject government attempts to seal court files that relate to such allegations. Access to documents detailing government misconduct is at the core of what the common law and First Amendment rights of access protect, as "[p]ublic scrutiny of a criminal trial enhances the quality and safeguards the integrity of the fact finding process, with benefits to both the defendant and to society as a whole." *Globe Newspaper Co.*, 457 U.S. at 606; *Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) (First Amendment right of access "serves an important function of monitoring prosecutorial or judicial misconduct"); *United States v. Nejad*, 521 F. Supp. 3d 438, 443 (S.D.N.Y. 2021) ("[P]rosecutorial misconduct in this case is of exceptional public interest, bearing both on the fair administration of justice for criminal defendants and efficacious prosecution of violations of federal law.").

Public access to the government's Letter that resulted in the dismissal of this case is fundamental to "the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Amodeo II*, 71 F.3d at 1048. The Second Circuit has held that "documents submitted to a court for its consideration in a . . . motion are—as a matter of law— judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." *Lugosch*, 435 F.3d at 121. The LADO's centrality to resolution of this case compels transparency because it directly implicated the Court's exercise of its Article III authority in adjudicating the defendant's substantive criminal rights. "As in the cases involving trial rulings or evidence admitted, the court's . . . action on a motion [is] [a] matter which the public has a right to know about and evaluate." *Bank of America v. Hotel Rittenhouse Assoc.*,

800 F.2d 339, 344 (3d Cir. 1986). The logic of access is compelling, and is necessary to maintain public confidence in the administration of justice. The Court should thus immediately make the LADO available to the press and public in a public docket filing.

Simply put, "the test for sealing is not easily met." *United States v. Nojay*, 22 F. Supp. 3d 208, 214 (W.D.N.Y. 2016). The government cannot possibly meet its constitutional burden of justifying the pervasive sealing undertaken on the docket here, particularly in light of the publicity this case has already received and the fact that, given the abandonment of the prosecution, there can be no concern over prejudice to the jury pool or preserving the fairness of the trial itself. Accordingly, there can be no real question the sealed court documents involve issues that are "manifestly ones of public concern and therefore ones in which the public has an interest in overseeing." *United States v. Erie Cnty.*, 763 F.3d 235, 242 (2d Cir. 2014). Maintaining blanket secrecy over wide swaths of the court record is the diametric opposite of narrowly tailored relief.

> [T]he public's right to inspect judicial records may not be evaded by a wholesale sealing of court papers. Instead, the district court must be sensitive to the rights of the public in determining whether any particular document, or class of documents, is appropriately filed under seal.

*United States v. Corbin*, 879 F.2d 224, 228 (7th Cir. 1989).

*Other Sealed Documents*

A number of pre-trial motions, related documents, and a Court Order have likewise been sealed in part or in full on the docket without the specific, on-the-record factual findings required for such sealing. Because court orders are cornerstone judicial documents, the presumptive rights of access indisputably attach to an Order issued by the Court that the docket indicates has been sealed. *See* Order to Show Cause (Dkt. No. 72). *Hardy v. Equitable Life Assurance Soc'y of United States*, 697 F. App'x 723, 725 (2d Cir. 2017); *United States v. Appelbaum (In re United States)*, 707 F.3d 283, 290 (4th Cir. 2013) ("[I]t is commonsensical that judicially authored or created documents are judicial records."). No countervailing factors

have been provided to overcome the high bar to sealing a court order. Indeed, in finding that a First Amendment right of access attaches to a protective order, one court rejected the argument that "general statements about the relevant law" concerning confidentiality that are typical in protective orders justified sealing. *United States v. Ressam*, 221 F. Supp. 2d 1252, 1264 (W.D. Wash. 2002). Since no basis has been provided that would overcome the high bar to seal a court order, the Court Order should be unsealed.

Further, the Second Circuit has found that the First Amendment and common law rights of access extend to a wide variety of pre-trial motions in criminal proceedings, from a "motion to preclude the use of certain evidence at trial," as well as to "[w]ritten documents filed in connection with pretrial motions." *In re New York Times Co.*, 828 F.2d at 114. The documents *Syracuse.com* seeks to unseal include the following: (1) Defendant's trial brief, Dkt. No. 31 (attachment No. 1), that was redacted pursuant to the sealed protective order referenced above in Docket No. 23; (2) Defendant's Response to the Government's Second Motion in Limine (Dkt. No. 53); (3) Defendant's Response to the Government's Motion in Limine (Dkt. No. 62), which was redacted, and sealed exhibits 4-6; (4) Letter regarding Jury Instructions and exhibit (Dkt. No. 64), which was redacted, and sealed attachments 1-2; (5) sealed documents concerning the Government's Third Motion in Limine and Defendant's response (Dkt. Nos. 70-71), with the Court noting in Dkt. No. 68 that Defendant's response "satisfi[ed] the requirements for ordering sealing under the governing legal standard set forth in Lugosh," and in Dkt. No. 69 that "public filing of the [Third Motion in Limine] may reveal matters currently governed by protective orders issued by the Court on February 9 and 10, 2026;" (6) Defendant's Letter Brief (Dkt. No. 77), which was redacted, and three exhibits that were redacted or sealed; and (7) Defendant's Brief in Response to the Court's Order to Show Cause (Dkt. No. 80).

In addition to motions and orders where the First Amendment presumption of access plainly applies, the Court has also sealed records, including, for example, the government's Second Motion in Limine (Dkt. No. 48), that contain grand jury material "because public filing of the above-described motion may reveal matters in violation of federal law, namely Rule 6(e) of the Federal Rules of Criminal Procedure, including matters currently maintained by this Court under seal." *Syracuse.com* has no way of knowing how many or which "matters" are currently



sealed under Rule 6(e), since many docket entries listed above provide little or no reasons for sealing. Rule 6(e) concerns the disclosure of grand jury material, which can be disclosed when parties demonstrate "that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979).

To justify access to grand jury materials, *Syracuse.com* may proffer facts "giving rise to a strong inference of misconduct." *Matter of Grand Jury Minutes in U.S. v. Tam*, No. 96 CV 2810, 1997 U.S. Dist. LEXIS 24743, at *10 (E.D.N.Y. Jan. 9, 1997). Facts that are already publicly known lose 6(e) protection. *In re North*, 16 F.3d 1234, 1244–45 (D.C. Cir. 1994); *In re Grand Jury Subpoena, Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007) ("[G]rand jury secrecy is not unyielding when there is no secrecy left to protect.") (quotation marks omitted).

Here, the government's voluntary withdrawal of charges against Aguilar-Garcia after the defense raised serious concerns about the lack of evidence supporting the claim he assaulted a federal officer with an automobile owner's manual "give[s] rise to a strong inference of misconduct." *Tam*, 1997 U.S. Dist. LEXIS 24743, at *10. No justification for continued secrecy has been proffered or is warranted here, and the need for disclosure to hold federal agents accountable is significant. *Syracuse.com*'s request is also narrowly directed at only the grand jury material that has been filed on the docket to support the government's now withdrawn assault charge. For these reasons, the relevant grand jury material should be released.

*Missing Docket Entries*

Several docket entries—22, 41, and 60—have not even been listed on the docket, in stark contrast to the historical practice of courts in this country to maintain records of proceedings in docket sheets presumptively accessible to the public. Since the early days of the Republic, "state statutes have mandated that clerks maintain records of judicial proceedings in the form of docket books, which were presumed open either by common law or in accordance with particular legislation." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 94–95 (2d Cir. 2004); *see*



*also Beuerlein v. Hodges*, 10 N.Y.S. 505, 506 (Sup. Ct., Gen. Term 1890) ("The docket–book is a record prescribed by the statute for the express purpose, among other things, of receiving the entry of the judgment. It is a public record because, by section 3141, the justice is required to keep it open, during the hours when a sheriff's office must be kept open, 'for search and examination by any person, upon his reasonable request.'"); *Morrow v. Pucher*, 244 N.Y.S. 174, 175 (Sup. Ct., Herkimer Cnty. 1930) ("It seems to be well settled that the docket of a justice of the peace is a public record and open to examination by the public.").

With respect to missing docket entries 22 and 41, the minute entries directly following them in docket entries 23 and 42 refer, respectively, to an "Order re 22 Ex Parte Motion (Sealed)" and an "Order re 41 Ex Parte Motion (Sealed)." But the listed docket entries nowhere include entries numbered 22 and 41 that were evidently the subject of the Court's Orders in docket entries 23 and 42. With respect to missing docket entry 60, the minute entry in docket entry 65 refers to an "Order re 60 Ex Parte Motion (Sealed)." But docket entry 60 itself is missing from the docket.

*Syracuse.com*—as the eyes and ears of the public it serves—has a presumptive First Amendment right to inspect and copy judicial documents maintained as part of the court clerk's file in this case, as in all cases. *In re New York Times Co.*, 828 F.2d at 114 (finding constitutional right of access "appl[ies] to written documents submitted in connection with judicial proceedings that themselves implicate the right of access"). The right of access ensures that proceedings are fairly conducted, and allows the public to know that the system is working properly. *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 502-03 (1st Cir. 1989). These concerns take on heightened importance in a prominent case such as this, where public education and the perception of fairness are critical. *See, e.g., Press-Enterprise II*, 478 U.S. at 13.

The effective exercise of the public's access right presupposes the existence of a complete case docket that clearly and accurately reflects the filing of any pleadings, motions, or court orders, including any judicial documents filed under seal. To paraphrase Winston Churchill, access to the docket sheet in this case is not the beginning of the end, but simply the end of the beginning. Accordingly, as the United States Court of Appeals for the Second Circuit has cogently reasoned, the failure to maintain a transparent case docket is itself a violation of the public's constitutional access right: "[T]he ability of the public and press to attend civil and

criminal cases would be merely theoretical if the information provided by docket sheets were inaccessible. *In this respect, docket sheets provide a kind of index to judicial proceedings and documents, and endow the public and press with the capacity to exercise their rights guaranteed by the First Amendment." Hartford Courant*, 380 F.3d at 93 (emphasis added); *see also id.* at 96 ("We therefore hold that docket sheets enjoy a presumption of openness and that the public and the media possess a qualified First Amendment right to inspect them.").

As both the First and Eighth Circuits have emphasized, and of particular significance here, the docketing of a sealed motion is required to provide effective notice to the public that it has been filed. *United States v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013) ("It is axiomatic that protection of the right of access suggests that the public be informed of attempted incursions on that right. Providing the public with notice ensures that the concerns of those affected by a closure decision are fully considered."); *In re Search Warrant*, 855 F.2d 569, 575 (8th Cir. 1988) ("The docketing of motions to . . . seal certain documents provides notice to the public, as well as to the press, that such a motion has been made and, assuming that such motions are docketed sufficiently in advance of a hearing . . . affords the public and the press an opportunity to present objections to the motions."); s*ee also United States v. Haller*, 837 F.2d 84, 87 (2d Cir. 1988) (docketing of hearing on a sealing request provides effective public notice).

With respect, the docketing practices here leave *Syracuse.com* "without a meaningful mechanism by which to find the documents necessary to learn what [has] actually transpired" in this Court in this case. *Globe Newspaper Co. v. Fenton*, 819 F. Supp. 89, 94 (D. Mass. 1993). Because of the failure to maintain a complete and accurate docket sheet, *Syracuse.com* has been frustrated in its ability to meaningfully assess whether a motion to intervene is warranted for the purpose of challenging the sealing of the missing docket entries, to the detriment of an informed public. *Hartford Courant*, 380 F.3d at 94 ("Sealed docket sheets would also frustrate the ability of the press and the public to inspect those documents, such as transcripts, that we have held presumptively open.").

Finally, we respectfully submit that the perception of judicial integrity is enhanced when court records are readily accessible to, not secreted away from, the public. With respect to the docket sheet entries in this case, "their availability greatly

enhances the appearance of fairness." *Hartford Courant*, 380 F.3d at 95. Here, the free flow of information required by the First Amendment will inform citizens across the nation who are interested in the administration of justice in cases brought against citizens and non-citizens alike for allegedly assaulting federal officers.

Conclusion

For the foregoing reasons, *Syracuse.com* respectfully requests that the Court issue an order (1) formally recognizing *Syracuse.com*'s intervenor status; (2) unsealing the Government's Letter Accompanying Dismissal Order in Dkt. Nos. 81 and 83; (3) unsealing the additional pre-trial motion and related documents and Court Order sealed in Dkt. Nos. 31, 48, 53, 62, 64, 70-72, 77 and 80, and (4) ensuring that missing docket entries 22, 41, and 60 are posted on the public docket.

Respectfully submitted,

**CORNELL LAW SCHOOL**
**FIRST AMENDMENT CLINIC**

By: /s/ Michael J. Grygiel
Michael J. Grygiel
Heather E. Murray
CORNELL LAW SCHOOL
FIRST AMENDMENT CLINIC
Myron Taylor Hall
Ithaca, NY 14853
Tel.: (607) 255-8518
Email: mgrygiel@foleyhoag.com
Email: hem58@cornell.edu

*Counsel for Advance Publications, Inc.,*
*and Syracuse.com*

